**Bill G. ISLER, et al.,**
**Plaintiffs-Appellees,**

v.

**TEXAS OIL & GAS CORPORATION,**
**Defendant-Appellant.**

**No. 83–1624.**

United States Court of Appeals,
Tenth Circuit.

Nov. 29, 1984.
Rehearing Denied Dec. 28, 1984.

Rod M. Schumacher of Atwood, Malone, Mann & Cooter, P.A., Roswell, N.M. (George D. Giddens, Jr., Roswell, N.M., with him on briefs), for defendant-appellant.

Paul M. Bohannon of Hinkle, Cox, Eaton, Coffield & Hensley, Roswell, N.M. (Michele A. Drexler, Roswell, N.M., with him on brief), for plaintiffs-appellees.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Defendant Texas Oil and Gas Corporation (TXO) appeals from a jury's verdict of negligence in this diversity case.

TXO owned a federal oil and gas lease that it farmed out to plaintiff Mr. Isler. The farmout agreement provided that TXO would use its best efforts to make rental payments but had no responsibility to Mr. Isler *if it failed to do so.* The agreement further provided that TXO would give notice before ceasing to make payments. TXO, through oversight, failed to make the necessary rental payments and the lease expired. Mr. Isler and his assignees completed two wells after the lease expired and before being notified of such expiration. Both wells were dry.

The jury returned a verdict, in response to special interrogatories, that TXO had not breached the farmout agreement, but that it was nonetheless liable in tort for damages caused by its negligence. TXO argues that the trial court should not have permitted the jury to consider tort liability, that the jury's award of damages was not in accordance with instructions of the court and was not supported by the evidence, that plaintiff U-Mex Production Company is barred from asserting any claim because

the assignment from Mr. Isler to U-Mex without the consent of TXO was prohibited by the contract, and that the exculpatory clause barred liability in contract and tort.

We find *Rio Grande Jewelers Supply, Inc. v. Data General Corporation,* 101 N.M. ——, 689 P.2d 1269 (N.M.1984), a case decided since the submission of briefs, to be controlling. *Rio Grande* was a case brought in federal district court involving a sale of goods governed by New Mexico law. The buyer sought to maintain, among other claims, a tort action against the seller for a negligent misrepresentation made prior to the formation of the contract and an action for breach of express warranties. The contract included an integration clause and a provision disclaiming all prior representations and all warranties, express or implied, not contained therein. Despite this disclaimer, the jury awarded damages to the buyer on its negligent misrepresentation claim.

The issue of whether a tort claim may be maintained under these circumstances was certified by the Tenth Circuit Court of Appeals to the New Mexico Supreme Court. That court found that the buyer's claim of negligent misrepresentation was "nothing more than an attempt to circumvent the operation of the Commercial Code [which provides that warranties may be disclaimed] and to allow the contract to be rewritten under the guise of an alleged action in tort," *id.* at 3, and that to allow such a tort claim "would be contrary to the favored policy of 'freedom of contract' ...." *Id.* at 2. The court further stated that "where the parties are otherwise competent and free to make a choice as to the provisions of their contract, it is fundamental that [the] terms of the contract made by the parties must govern their rights and duties." *Id.* at 3 (quoting *Smith v. Price's Creameries, Division of Creamland Dairies, Inc.,* 98 N.M. 541, 544, 650 P.2d 825, 828 (1982).

While retaining the historic and well defined exception doctrines such as fraud and unconscionability, the New Mexico court has made clear that it holds firm to the principle of freedom of contract. The very notion of contract is the consensual formation of relationships with bargained-for duties. An essential corollary of the concept of bargained-for duties is bargained-for liabilities for failure to perform them. Important to the vitality of contract is the capacity voluntarily to define the consequences of the breach of a duty before assuming the duty.

This case is illustrative. The effect of confusing the concept of contractual duties, which are voluntarily bargained for, with the concept of tort duties, which are largely imposed by law, would be to nullify a substantial part of what the parties expressly bargained for—limited liability. Unless such bargains are against public policy (covered either by prohibitory statutes or well-defined, judge-made rules such as unconscionability), there is no reason in fact or in law to undermine them. Indeed, it would be an unwarranted judicial intrusion into the marketplace. No reason appears to support such a radical shift from bargained-for duties and liabilities to the imposition of duties and liabilities that were expressly negated by the parties themselves when they decided to abandon their status as legal strangers and define their relationship by contract. Tort law proceeds from a long historical evolution of externally imposed duties and liabilities. Contract law proceeds from an even longer historical evolution of bargained-for duties and liabilities. The careless and unnecessary blanket confusion of tort and contract would undermine the carefully evolved utility of both.

In tort, the legislatures and the courts have set the parameters of social policy and imposed them on individual members of society without their consent. The social policy in the field of contract has been left to the parties themselves to determine, with judicial and legislative intervention tolerated only in the most extreme cases. Where there has been intervention, it has been by the application of well established contract doctrines, most of which focus on threats to the integrity of the bargaining

process itself such as fraud or extreme imbalance in bargaining power.

Further, it should not matter whether the breach of a bargained-for duty arises from inattention, a disagreement over the existence of the duty, a dispute over the nature of the duty, an inability to perform the duty, or a simple unwillingness to perform the duty. The parties by contract (or in the absence of an express provision, by implied rules evolved under contract analysis) have themselves defined the consequences of the breach. In the marketplace of contract, a breach is a breach is a breach—unless the parties choose to specify otherwise.

The facts in the case at hand are clearly within the scope of the contract principles reaffirmed by the New Mexico Supreme Court in the *Rio Grande* decision. Just as in that case, the facts alleged in plaintiffs' tort claim are precisely the same as those alleged in their contract claim. Because the contract specifically defined the rights and duties of the parties regarding rental payments and notice, thereby precluding any extracontractual tort duty regarding such payments, we must reverse the judgment for plaintiffs sounding in tort. Ac-cordingly, we need not reach defendant's other claims.

In their briefs, plaintiffs suggest that the jury's verdict for them in tort and against them in contract was the result of confusion. On the record in this case, such a possibility is substantial. However, plaintiffs themselves invited such confusion by introducing negligence theories into what was a straightforward contract case. In addition, plaintiffs have not cross-appealed the judgment against them in contract nor properly preserved any request for a new trial that could correct the confusion, if indeed any existed, in the minds of the jury. As a result, the only remedy left to this court is to reverse the judgment based on tort and direct that the case be dismissed. *See Swarb v. Lennox*, 405 U.S. 191, 201, 92 S.Ct. 767, 772, 31 L.Ed.2d 138, *rehearing denied*, 405 U.S. 1049, 92 S.Ct. 1303, 31 L.Ed.2d 592 (1972).

REVERSED.