Donald D. SMITH, Plaintiff,

v.

HAWKEYE–SECURITY INSURANCE COMPANY, Defendant.

Civ. A. No. 93–1106–MLB.

United States District Court, D. Kansas.

Jan. 20, 1994.

**1374**

Joseph H. Cassell, Wichita, KS, for plaintiff.

Arthur S. Chalmers, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, KS, for defendant.

### MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court on Hawkeye's motion to dismiss and renewed motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6). (Docs. 6 and 22)[1]

Smith is the president and owner of Colby Manufacturing Company, Inc. On April 4, 1989, Hawkeye issued to Colby Manufacturing a comprehensive Business Auto Policy effective from May 8, 1989, to May 8, 1990. On July 20, 1989, Smith was injured in an automobile accident in Colorado while driving a company vehicle.

Hawkeye's insurance policy extended out of state coverage to the minimum required limits in the state where the vehicle was being used.[2] At the time of the accident, Colorado law required compensation without regard to fault up to a limit of $50,000 "for payment of all reasonable and necessary expenses for medical ... care and treatment ..." C.R.S. § 10–4–706(1)(b).

Smith alleges he was told by a Hawkeye representative following the accident that it would not pay any medical expenses incurred above Kansas personal injury protection (PIP) benefits, $4,500. As a result of this advice, Smith contends he was forced to delay medical treatment. In September, 1992, Smith was informed by a Colorado attorney that he was entitled to $50,000 in PIP benefits for medical treatment. When he reported this conversation to Hawkeye's representative, he was "told to go ahead and get proper treatment and submit the medical bills to defendant." (Doc. 1, ¶ 12) Smith has incurred approximately $25,000 in medical expenses since September, 1992. He submitted the bills to Hawkeye, which has now paid them. (Doc. 24, p. 2) While it is difficult to tell for sure from Smith's memoranda (Doc. 15 and 24), it appears that the parties may be having some dispute over Smith's claim for lost wages. In addition, Smith expresses concern that Hawkeye will not pay medical bills which he expects to incur in the future.

Smith commenced this lawsuit against Hawkeye, alleging constructive fraud, negligence, strict liability and breach of contract.[3] Smith also seeks statutory penalties under either Kansas or Colorado law for Hawkeye's refusal to pay his medical expenses and wage losses, as well as the imposition of punitive damages.

### Standards for 12(b)(6) Motions

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept as true all material allegations in the complaint, and must construe the complaint in favor of the complaining party. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The court may not dismiss a cause of action for failure to state a claim unless it appears beyond a doubt that

---

1. Smith filed a First Amended Complaint on September 15, 1993 (Doc. 20), several months after Hawkeye filed its motion to dismiss. Smith was not required to obtain leave to file the amended complaint because Hawkeye's motion to dismiss was not a responsive pleading within the meaning of Fed.R.Civ.P. 15(a). *See* Wright, Miller and Kane, *Federal Practice and Procedure,* Civil 2d § 1483, p. 585. Smith's amended complaint is substantially identical to his original complaint. The significant amendments are claims for additional medical expenses and wage loss. Hawkeye has moved to dismiss the amended complaint and Smith has responded (Doc. 24) Therefore, this order will apply to the amended complaint.

2. The pertinent provision of Hawkeye's policy read:
   F. OUT OF STATE EXTENSIONS OF COVERAGE.
   1. While a covered auto is away from the state where it is licensed we will:
   b. Provide the minimum amounts and types of other coverages, such as "No–Fault", required of out of state vehicles by the jurisdiction where the covered auto is being used.

3. In his response to the motion to dismiss, Smith states he will drop his strict liability claim and assert the tort of outrage. (Doc. 15, p. 15) In his amended complaint, there is no mention of any outrage claim.

the plaintiff can prove no set of facts to support the theory of recovery that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Bradley v. United States,* 951 F.2d 268, 270 (10th Cir.1991).

## Discussion

Hawkeye argues Smith's tort theories are based on the same conduct alleged to constitute breach of contract. Hawkeye contends that Smith's sole remedy is to sue for breach of contract and seek attorney's fees under K.S.A. 40–256.

■ In support of its argument, Hawkeye relies on *Spencer v. Aetna Life & Casualty Ins. Co.,* 227 Kan. 914, 611 P.2d 149 (1980). In *Spencer,* the Kansas Supreme Court addressed whether Kansas law recognized the tort of bad faith. The Court held it did not, finding that adequate remedies existed to force compliance with the terms of insurance contracts. *Id.* at 926, 611 P.2d 149. The Court also noted that punitive damages were not recoverable for breach of an insurance contract in the absence of an independent tort.

Smith seeks to distinguish *Spencer* on the basis that he is alleging an independent tort causing additional injury. According to Smith, his tort claims are predicated upon conduct that occurred in 1989, three years prior to Hawkeye's breach of contract. The conduct forming the basis of Smith's tort claims is Hawkeye's failure to advise him of his right to receive up to $50,000 in PIP benefits.[4]

■ The court is unpersuaded by Smith's argument. The tort duties Smith alleges Hawkeye breached arise from the contract. Hawkeye's failure to advise Smith of his contractual rights under the insurance policy cannot be independent of the insurance policy. The existence of a contractual relationship bars the assertion of tort claims covering the same subject matter governed by the contract. *Id.; Isler v. Texas Oil & Gas Corp.,* 749 F.2d 22, 24 (10th Cir.1984). Smith cannot circumvent this principle by dressing up his breach of contract claim in tort clothing.

■ Since Smith's tort theories are unavailing, his punitive damages claim must also fail. Under Kansas law, punitive damages are not recoverable for breach of contract. *Equitable Life Leasing Corp. v. Abbick,* 243 Kan. 513, 516, 757 P.2d 304 (1988).

Smith's constructive fraud, negligence, and punitive damages claims are dismissed.

■ Smith's remaining claims are for breach of contract and statutory penalties. Hawkeye argues that Smith cannot meet the $50,000 amount in controversy requirement of 28 U.S.C. § 1332. In determining whether the amount in controversy exceeds $50,000, the court examines the plaintiff's damage claims at the time the action is commenced. *T.K. Hite Collision Repair v. State Farm Mut. Auto.,* 790 F.Supp. 254, 255 (D.Kan.1992) (Citations omitted). The court will not dismiss the action unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount. *Sharp Electronics Corp. v. Copy Plus, Inc.,* 939 F.2d 513, 515 (7th Cir.1991) (Citations omitted).

In his amended complaint, Smith alleges that he has incurred approximately $25,000 in medical expenses and $20,800 in wage losses as a result of Hawkeye's breach of contract. Smith admits that Hawkeye has paid over $25,000 prior to the filing of the amended complaint. Smith cannot claim as an item of damage amounts that Hawkeye has already paid. As for the items of future medical expenses, Smith has not alleged that Hawkeye has refused to pay such items, and speculation that Hawkeye will not pay them

---

4. Smith's tort-based allegations, including fraud, are contained in the following paragraph of his amended complaint (Doc. 20, ¶ 10):

   Plaintiff timely notified defendant through its's (sic) general agent Gerstner of the car accident. (See Exhibit "A" attached). Defendant treated plaintiff's claim as basic PIP. As plaintiff incurred medical expenses they were timely forwarded to defendant. When plaintiff approached the Kansas PIP limit on medical expenses he was informed by defendant through its agent that defendant would not pay for any medical treatment beyond the statutory limit.

   These allegations are insufficient to meet the requirements of Fed.R.Civ.P. 9(b).

if they arise does not form a basis for damages.

 Smith argues this court should apply Colorado law, under which he would be entitled to recover statutory penalties, treble damages, interest, costs and attorney's fees. In *State Farm Mut. Auto. Ins. Co. v. Baker,* 14 Kan.App.2d 641, 797 P.2d 168, *rev. denied* 247 Kan. 705 (1990), the court restated the rules governing choice of law applicable to insurance contracts:

> Under Kansas law the choice of which state's law is applicable to the construction of a contract depends on where the contract is made. For choice of law purposes, a contract is 'made' where the last act necessary to complete the contract occurs.

*Id.* at 644–45, 797 P.2d 168 (quoting *Simms v. Metropolitan Life Ins. Co.,* 9 Kan.App.2d 640, Syl. ¶¶ 1, 3, 685 P.2d 321 (1984)).

Smith purchased the insurance policy in question on behalf of his company from Gerstner Insurance, Inc., an independent insurance agent for Hawkeye whose business was located in Colby, Kansas. There can be no question but that the contract was made in Kansas. Thus, Kansas law governs this case and Smith's claim for statutory damages under Colorado law is untenable.

 Smith's claim is for the amount of his wage loss, $20,800,[5] plus any statutory penalties Kansas law may provide. While attorney's fees are recoverable as an element of damages, (*Bank IV Salina, N.A. v. Aetna Cas. & Sur. Co.,* 783 F.Supp. 1315, 1317 (D.Kan.1992)), the court does not believe that Smith's attorney's fees, when coupled with his claim for lost wages, are of sufficient magnitude necessary to meet the jurisdictional threshold.[6] Smith's breach of contract claim therefore fails for lack of subject matter jurisdiction.

---

**5.** As previously noted, it is not clear whether a dispute actually exists regarding lost wages. In his response (Doc. 24), Smith states that Hawkeye "still refuses to pay" his lost wages, yet he has attached to his response a letter which states that Hawkeye is "in the process of making ... reimbursement of ... lost wages." (Doc. 24, Ex. B) Notwithstanding these conflicting signals,

Hawkeye's motion to dismiss and its amended motion to dismiss (Docs. 6 and 20) are hereby granted.

IT IS SO ORDERED.

---

the court will assume, for purposes of this order, that Smith's $20,800 wage loss claim remains unpaid.

**6.** By the express language of § 1332, interest and costs are not counted towards the calculation of the $50,000 requirement.