(917 P.2d 901)

No. 73,243

LARRY BEESON and CONNIE BEESON, *Appellees*, v. JIM ERICKSON, d/b/a BULLOCK GARAGES and BULLOCK GARAGES, INC., *Appellants*.

Opinion filed June 7, 1996.

*Gregory S. Hill* and *James F. Ralls, Jr.*, of Feldhausen & Ralls, P.C., of Kansas City, Missouri, for the appellants.

*Patrick E. Henderson*, of Duncan-Senecal Law Offices, Chartered, of Atchison, for the appellees.

Before RULON, P.J., LEWIS, J., and JANICE D. RUSSELL, District Judge, assigned.

LEWIS, J.: In 1990, the protagonists in this lawsuit entered into a written construction agreement. Defendants Jim Erickson, d/b/a

Bullock Garages and Bullock Garages, Inc., agreed to build a new garage for plaintiffs, Larry and Connie Beeson, to enclose the old detached garage face with a wall, a door, and a window, and to pour a new concrete driveway to replace a gravel drive. Plaintiffs specifically asked defendants to construct the driveway in such a manner as to direct water away from the house.

Defendants completed the work. Two years later, plaintiffs found water flooding their basement. The water ruined their carpet, linoleum, paneling, and the sheetrock in a renovated room.

After an exchange of letters, plaintiffs sued defendants for damages, claiming defendants were negligent in that they "altered the drainage and plugged the drain tile around the residence of the Plaintiffs."

After the matter was tried, the trial court entered judgment in favor of plaintiffs, finding that defendants were negligent in crushing a drain tile located under the driveway and in failing to make the driveway slope in such a manner as to direct water away from the house. The court then awarded plaintiffs the sum of $6,247.92. All of the damages were caused during the performance of the parties' agreement.

The agreement between the parties contained the following clause:

"Customer agrees that in the event Bullock must enforce or defend Bullock's rights under this contract, or any matters relating thereto, that Bullock may, at Bullock's option, choose to arbitrate any controversy or claim arising out of or relating to this contract, or the breach thereof, before the Better Business Bureau's arbitration system, the American Arbitration Association or any other nationally recognized arbitration association. Customer hereby agrees to submit to binding arbitration as provided herein if Bullock so elects and judgement *sic* upon the award rendered by the arbitrator(s) may be entered in any appropriate Illinois court. Customer further agrees to put the entire purchase price of this contract into escrow with the arbitrator(s) selected before arbitration begins."

Defendants argued at the trial level and on appeal that the contractual provision set forth above should have been enforced and that the matter should have been referred to arbitration. They suggest that plaintiffs should not have been permitted to assert tort theories in a contract case. They also maintain that liability was

imposed upon them under the tort cause of action for violation of a duty which was expressly negated by the contract.

The trial court refused to refer the matter to binding arbitration on the grounds that plaintiffs' action was framed in tort and that under Kansas law, there can be no mandatory arbitration of an action sounding in tort. The trial court apparently did not deal with defendants' contractually based defenses.

Plaintiffs do not assert that the arbitration clause in the agreement between the parties was against public policy or unconscionable. They take the position on appeal that they can nullify the arbitration clause by pleading a cause of action in tort. They also argue that defendants have waived the right to enforce their contractual right to arbitration.

Both parties raise claims of error. For reasons that will become obvious, we focus on the arbitration issue.

## WAIVER

Plaintiffs argue that defendants waived their right to invoke the arbitration clause in the agreement. They base this claim on the fact that defendants were tardy in asserting their arbitration rights. We disagree.

We do not dispute the fact that a right to arbitration may be waived. This principle was recognized by this court in *D.M. Ward Constr. Co. v. Electric Corp. of Kansas City*, 15 Kan. App. 2d 114, 803 P.2d 593 (1990), *rev. denied* 248 Kan. 994 (1991), and by our Supreme Court in *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 751 P.2d 122 (1988). In *Jackson Trak*, the Supreme Court said: "To be construed as waiving the right to arbitrate, the party's conduct must unequivocally demonstrate the intent to waive." 242 Kan. 683, Syl. ¶ 2.

In this case, plaintiffs maintain defendants' waiver arises because defendants took no steps regarding arbitration until after suit was filed. That is an accurate statement of the facts. However, the record also shows that defendants raised their right to arbitration in their answer and that they thereafter objected to the trial court's denial of motions to compel arbitration and otherwise pursued the issue throughout the litigation.

We have read the record, and the defendants' conduct on the issue of arbitration unequivocally demonstrates their intent to rely on and insist upon enforcing their right to arbitration.

There is no substantial competent evidence in the record that defendants waived their right to arbitrate. The issue was timely raised at the time the suit was filed and was pursued by defendants thereafter. We hold there was no evidence that defendants waived the right to enforce mandatory arbitration under their agreement with plaintiffs.

## ARE PLAINTIFFS' TORT CLAIMS MAINTAINABLE?

We agree that plaintiffs' petition in this case is framed upon a tort theory. The term used in the petition to describe defendants' misconduct is negligence, which is a tort concept and a tort term. We do not disagree that the legal semantics employed in drafting plaintiffs' petition pleads a cause of action in tort. We do conclude, however, that under the circumstances shown in this action, plaintiffs should not have been permitted to maintain an action in tort.

The parties all agree that the Kansas Uniform Arbitration Act is applicable. We note that the term "uniform" is a misnomer when it is applied to the Kansas Act, which indeed is not uniform at all with the "uniform acts" in place in most of our sister states.

The key provisions of the Kansas Act are found in K.S.A. 1995 Supp. 5-401(b) and (c) and read as follows:

"(b) Except as provided in subsection (c), a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable except upon such grounds as exist at law or in equity for the revocation of any contract.

"(c) The provisions of subsection (b) shall *not apply* to . . . (3) *any provision of a contract providing for arbitration of a claim in tort.*" (Emphasis added.)

The Kansas Act clearly prohibits parties from enforcing a contractual provision to arbitrate a claim in tort. The trial court seized upon this provision of the Kansas Act to declare that arbitration was unavailable in this case since plaintiffs' cause of action sounded in tort. In exempting tort actions from its arbitration provisions, the Kansas Act differs from the Uniform Arbitration Act and the Federal Arbitration Act. Under both the Uniform Arbitration Act

and the Federal Arbitration Act, a contractual provision to arbitrate applies regardless of whether the action sounds in tort or in contract. *R.J. Palmer Constr. Co. v. Wichita Band Instrument Co.*, 7 Kan. App. 2d 363, 365, 642 P.2d 127 (1982).

Indeed, it appears to us that under *R.J. Palmer*, this action may have been one where "commerce" was involved. If that is true, then the Federal Act would have preempted the Kansas Act and would have applied, and the tort exception would not exist. This particular proposition was not raised by the parties, and we note it now only in passing.

At one time, only Kansas and Arkansas exempted tort actions from their "uniform arbitration acts." See Fowks, *So You Thought You Knew What a Tort Was?*, 49 J.K.B.A. 31 (1980). It is possible that other states have joined this select group in the past several years, but we have not extended our research in that direction.

All of this is relevant to the issue which we must decide. Plaintiffs were aware of the arbitration clause in the contract and were equally aware of the tort exception set forth in the Kansas Uniform Arbitration Act. Plaintiffs did not desire to become involved in arbitration, so they framed their petition in tort in order to nullify the arbitration clause in their agreement with defendants. Plaintiffs' counsel candidly admitted as much in oral argument to this court. We do not fault plaintiffs for the decision or for their strategy. They made an educated and calculated decision to avoid arbitration by deliberately framing their action in tort, which they knew to be excepted from mandatory arbitration in Kansas.

The question we must answer is whether a plaintiff may bring an action which arises out of the performance of a contract and call it a tort action, thereby rendering the mandatory arbitration clause in an agreement null and void? We conclude that such an attempt must fail.

In reaching our decision, we do not wish to engage in a theoretical debate about the aesthetics of pleading and procedure. A tort action can just as easily be a contract action, and a contract action can become, through the judicious use of the right words, a tort action. This is another way of saying that in the law, a rose may not always be a rose.

We wish to approach this issue from a "real world" context, or at least as close to that as we can get in the law. This agreement in plain terms permits the defendant to refer to arbitration "any controversy or claim arising out of or relating to this contract." This is a valid clause, and we believe it should not be nullified by legal semantics. There is no question that plaintiffs claims against defendants arose out of and are related to the contract. The damages plaintiffs claimed and recovered were caused by defendants in the process of doing construction work under a written agreement. Plaintiffs claim, and the trial court found, that defendants failed to slope the driveway properly and that they negligently crushed an underground drain tile when pouring the new driveway, both of which acts led to the flooding of plaintiffs' basement. These actions of defendants were all performed while they were attempting to fulfill their written agreement with plaintiffs. Plaintiffs now want to call those acts negligent. They may have been, but they also arose out of and relate to the contract in question. Defendants' actions which caused damages to plaintiffs breached their agreement or breached the implied covenants of that agreement. To simply assert that these actions were also "torts" begs the question. Can defendants' rights be so easily altered when their rights arise from and rest upon a written agreement assented to by plaintiffs? We do not think so.

Do defendants have a right to insist that the agreement be enforced as written and that we not resort to legalistic words and concepts to render portions of the agreement unenforceable? We believe that they do. "When a contract is clear and unambiguous and no claim of fraud or overreaching is made and there is no claim that the agreement is unconscionable, it will generally be enforced as written." *Estate of Bryant v. All Temperature Insulation, Inc.*, 22 Kan. App. 2d 387, Syl ¶ 3, 916 P.2d 1249, *rev denied* 260 Kan. 992 (1996). "The policy of the law in general is to permit mentally competent parties to arrange their own contracts and fashion their own remedies where no fraud or overreaching is practiced. Contracts freely arrived at and fairly made are favorites of the law." *Kansas City Structural Steel Co. v. L. G. Barcus & Sons, Inc.*, 217 Kan. 88, 95, 535 P.2d 419 (1975).

In the real world, plaintiffs' action arose out of and was based upon defendants' obligations under the contract. Only in the somewhat unrealistic world of theoretical legal pleading can a contract action become a tort action through the judicious use of legalistic semantics. We reject that course of action and conclude that plaintiffs may not plead their contract action as a tort action and thereby escape the provisions of a bargain with which they are unhappy.

This exact issue has not been decided in the context in which we now deal. There are decisions, however, which point us in this direction.

We begin with *Isler v. Texas Oil & Gas Corp.*, 749 F.2d 22 (10th Cir. 1984). In that case, Texas Oil and Gas Corporation (TXO) had farmed out certain oil and gas leases to Isler. The farm-out agreement bound TXO to use only "its best efforts" to make delay rental payments and to give Isler notice if it decided to cease payments. TXO failed to make the required delay rental payments and failed to notify Isler that it had ceased to make the payments. Isler sued TXO in tort for negligence. The jury found that *TXO did not violate its farm-out agreement* but held it liable in tort for negligence in failing to make the payments. The 10th Circuit reversed, holding that Isler would not be permitted to pursue a tort claim, which would basically nullify his agreement with TXO:

"The very notion of contract is the consensual formation of relationships with bargained-for duties. *An essential corollary of the concept of bargained-for duties is bargained-for liabilities for failure to perform them. Important to the vitality of contract is the capacity voluntarily to define the consequences of the breach of a duty before assuming the duty.*

"This case is illustrative. The effect of confusing the concept of contractual duties, which are voluntarily bargained for, with the concept of tort duties, which are largely imposed by law, would be to nullify a substantial part of what the parties expressly bargained for—limited liability. Unless such bargains are against public policy (covered either by prohibitory statutes or well-defined, judge-made rules such as unconscionability), there is no reason in fact or in law to undermine them. Indeed, it would be an unwarranted judicial intrusion into the marketplace. No reason appears to support such a radical shift from bargained-for duties and liabilities to the imposition of duties and liabilities that were expressly negated by the parties themselves when they decided to abandon their status as legal strangers and define their relationship by contract. Tort law proceeds from a long historical evolution of externally imposed duties and liabilities. Contract law proceeds from

an even longer historical evolution of bargained-for duties and liabilities. The careless and unnecessary blanket confusion of tort and contract would undermine the carefully evolved utility of both.

"In tort, the legislatures and the courts have set the parameters of social policy and imposed them on individual members of society without their consent. The social policy in the field of contract has been left to the parties themselves to determine, with judicial and legislative intervention tolerated only in the most extreme cases. Where there has been intervention it has been by the application of well established contract doctrines, most of which focus on threats to the integrity of the bargaining process itself such as fraud or extreme imbalance in bargaining power.

"Further, it should not matter whether the breach of a bargained-for duty arises from inattention, a disagreement over the existence of the duty, a dispute over the nature of the duty, an inability to perform the duty, or a simple unwillingness to perform the duty. The parties by contract (or in the absence of an express provision, by implied rules evolved under contract analysis) have themselves defined the consequences of the breach. In the marketplace of contract, a breach is a breach is a breach—unless the parties choose to specify otherwise.

"The facts in the case at hand are clearly within the scope of the contract principles reaffirmed by the New Mexico Supreme Court in the *Rio Grande* decision. Just *as in that case, the facts alleged in plaintiffs' tort claim are precisely the same as those alleged in their contract claim. Because the contract specifically defined the rights and duties of the parties regarding rental payments and notice, thereby precluding any extracontractual tort duty regarding such payments, we must reverse the judgment for plaintiffs sounding in tort.*" (Emphasis added.) 749 F.2d at 23-24.

The instant matter has aspects very similar to *Isler*. In this case, the agreement between the parties provides:

"BULLOCK ASSUMES NO RESPONSIBILITY FOR:

. . . .

"*4. Any damage to septic tanks, underground utility lines, pipes or similar things, including, but not limited to, gas lines, pipes, telephone cables, t.v. cables, radio cables, electric and power lines.*" (Emphasis added.)

Defendants argue that under this clause they assumed no responsibility for damages to such items as the crushed underground drain tile. This appears to be a reasonable construction of the clause on the part of defendants. The trial court, however, found that defendants were negligent in crushing the underground drain tile. As in *Isler*, it appears that this action on the part of defendants may not have been a breach of its agreement with plaintiffs but

may have very well been negligent if one applies a tort theory to the facts. This issue was raised by defendants in their trial brief and is raised on appeal, but it apparently was not seriously considered by the trial court. It must be determined whether the crushing of the drain tile was a breach of duty under the agreement.

This judgment must be reversed if for no other reason than to assess whether defendant is liable for crushing the underground drain tile. A fair reading of the agreement of the parties leads one to conclude that defendants' actions in crushing the underground drain tile may not have been a breach of their agreement with plaintiffs. This is exactly the situation that existed in *Isler*. Defendants were not permitted to use this defense apparently because the suit was framed as an action in tort. Allowing plaintiffs to treat their contract action as a tort action imposed liabilities on defendants which may be beyond those for which they bargained. This is not permissible and is reversible under the rationale set forth in *Isler*.

The next significant case is *Ford Motor Cred. Co. v. Suburban Ford*, 237 Kan. 195, 699 P.2d 992, *cert. denied* 474 U.S. 995 (1985). In that case, the parties' relationship was purely contractual in nature. Difficulties arose, and the matter ended up in court. As part of its defense, Suburban Ford asserted 11 different counterclaims which were framed in tort. The jury returned a verdict in favor of Suburban Ford on those counterclaims and awarded it a punitive damage judgment of $1,750,000. Our Supreme Court reversed the judgment in favor of Suburban Ford, holding that the trial court had erred in even instructing the jury on plaintiffs' tort theory of liability. The court relied extensively on the decision in *Isler* in reaching its conclusions. We believe that the key to the *Suburban Ford* decision is the following statement: "It should be emphasized that all parties to this action were in a contractual relationship with each other, and their difficulties with each other arise directly from that contractual relationship." 237 Kan. at 203. That statement could be made with equal confidence in the instant matter.

There has been some debate over the years about just what *Suburban Ford* stands for and what it means. See Rossi, *Lender Liability in Kansas: A Paradigm of Competing Tort and Contract*

*Theories*, 29 Washburn L.J. 495, 516-46 (1990). We believe, however, that *Suburban Ford* stands for the proposition that a contract action cannot become a tort action by simply saying so. It stands for the proposition that when parties' difficulties arise directly from a contractual relationship, the resulting litigation concerning those difficulties is one in contract no matter what words the plaintiff may wish to use in describing it. We rely on *Suburban Ford* in reversing this judgment in favor of defendants.

We believe that *Suburban Ford* stands for real world reality above legal semantics. This is a principle which we utilize in the instant matter. In this case, the plaintiffs' lawsuit arose from the contractual relationship between the parties. It could have been filed as an action for a breach of contract, and we conclude that one cannot change the nature of the action merely by using words to make it sound like a tort action, particularly when doing so interferes with the substantial rights of the other contracting party.

In *L.R. Foy Constr. Co. v. Professional Mechanical Contractors*, 13 Kan. App. 2d 188, 766 P.2d 196 (1988), this court dealt with the negligence/contract issue in the context of claim preclusion. In *Foy*, the parties had been to arbitration and defendant had prevailed. Plaintiff then sued defendant for the same actions, calling defendants' misconduct tortious. Plaintiff argued that its tort claims were not precluded by the arbitrator's decision on their contract claims. We held the action was barred by claim preclusion and said:

"Foy attempts to avoid the application of claim preclusion by asserting that identity in the cause of action is lacking. Foy reasons that its present claims *sound in tort and that these tort claims have not previously been litigated since tort claims may not, under K.S.A. 1987 Supp. 5-401, be arbitrated.*

"*A claim in tort arises when a party violates some duty imposed on him by law. In the present case, PMC owed Foy no duties except those defined in the contract between them. PMC's liability, if any, for its alleged failure to perform its contractual duties lies solely in contract.* See *Ford Motor Cred. Co. v. Suburban Ford*, 237 Kan. 195, 203-04, 699 P.2d 992, *cert. denied* 474 U.S. 995 (1985) . . . ; *Isler v. Texas Oil & Gas Corp.*, 749 F.2d 22, 24 (10th Cir. 1984) . . . ." (Emphasis added.) 13 Kan. App. 2d at 194-95.

We went on to say: "We conclude that the only claims Foy has against PMC sound in contract, not tort." 13 Kan. App. 2d at 195.

We conclude the only claims plaintiffs in this case have against defendants sound in contract and not in tort.

In *Atchison Casting Corp. v. Dofasco, Inc.*, 889 F. Supp. 1445 (D. Kan. 1995), the federal district court said:

"Defendant cites *Isler v. Texas Oil & Gas. Corp.*, 749 F.2d 22 (10th Cir. 1984), and various cases following it, for the proposition that plaintiff's misrepresentation claims are not actionable. *See also [Ford Motor Cred. Co. v. Suburban Ford*, 237 Kan. 195, 203, 699 P.2d 992, *cert. denied* 474 U.S. 995 (1985)]; [*L.R. Foy Constr. Co. v. Professional Mechanical Contractors*, 13 Kan. App. 2d 188, 194-95, 766 P.2d 196 (1988)]; *Woodmont Corp. v. Rockwood Ctr. Partnership*, 858 F. Supp 158, 160 (D. Kan. 1994); *Smith v. Hawkeye-Security Ins. Co.*, 842 F. Supp 1373, 1375 (D. Kan. 1994). These various cases *hold that the existence of a contractual relationship bars the assertion of tort claims covering the same subject matter governed by the contract. See, e.g., Smith*, 842 F. Supp. at 1375. They distinguish claims in tort, which arise when a party violates some duty imposed by law, and contractual duties, which are defined by the parties' agreement [citation omitted] and find that tort duties may not be imposed where the party's duties and rights are specifically defined by contract. [Citations omitted.] ('The point in *Isler* is that a party cannot have a tort duty when the party's same duties and rights are specified by contract.'). Where the parties contemplate a remedy in the event of breach, and the provisions of the contract cover the consequences of default, the bargained-for existence of a contractual remedy displaces the imposition of tort duties. [Citation omitted.]" (Emphasis added.) 889 F. Supp. at 1461.

In the context in which we deal, the only claims plaintiffs had against defendants sound in contract and not in tort. Plaintiffs' action is framed in tort to take advantage of the Kansas Uniform Arbitration Act and avoid compulsory arbitration under the agreement of the parties. This is not greatly different from the attempt to have two bites out of the same apple in *Foy* by first losing the contractual claims in arbitration and then refiling the same action as a tort. It did not work in *Foy*, and it will not work here.

We have applied the logic of the cases cited in this opinion to the case under consideration. That application causes us to hold as follows:

(1) Plaintiffs' causes of action against defendants arise out of and are related to their written contractual agreement.

(2) Plaintiffs are permitted to pursue an action against defendants under the contract but not in tort.

(3) The trial court erred in allowing plaintiffs to proceed on a "tort" theory which nullified the compulsory arbitration clause in the parties' agreement.

(4) The trial court erred in allowing plaintiffs to claim that defendants were liable in tort for negligently crushing an underground drain tile and then in finding that the crushing of such tile was the cause of plaintiffs' damages. This was error because under the agreement of the parties, defendants may not have been responsible for any damages in crushing the underground drain tile, and a party may not be held responsible for an action in tort when that action is either permitted by the agreement or is, at least, not a breach of the agreement.

(5) The trial court erred in refusing to refer the matter to compulsory arbitration.

Reversed.