(153 P.3d 561)
No. 96,823

THE CITY OF ANDOVER, KANSAS, *Appellee,* v. SOUTHWESTERN BELL TELEPNONE, L.P., *Appellant.*

Opinion filed March 9, 2007.

*Timothy S. Pickering, Bruce A. Ney,* and *Melanie N. Sawyer,* of Southwestern Bell Telephone, L.P., of Topeka, for appellant.

*Norman G. Manley,* of Davis, Manley & Lane, of El Dorado, for appellee.

Before CAPLINGER, P.J., HILL and BUSER, JJ.

HILL, J.: We consider here an order denying arbitration of a claim of the City of Andover (Andover) against Southwestern Bell Telephone, L.P. (SWBT). Andover sued SWBT, alleging that the phone company's negligence in not promptly locating its buried cables forced the city into later making a contract with SWBT to move those cables. SWBT successfully moved the cables and was paid for its work. But the parties' contract had an arbitration clause and, when sued by Andover, SWBT unsuccessfully sought arbitra-

tion of the claim. We hold that the district court properly refused to compel arbitration because under Kansas law, tort claims are not subject to contract provisions requiring arbitration of disputes.

*Background Facts*

In May 2005, Andover was planning development of a commercial addition to the city called "The River at Andover." Andover forwarded the proposed construction plans, which included the location of roads, sewer lines, and water lines, to SWBT and other various utilities. Andover requested that each utility identify any conflicts that might arise between the existing utility structures and the proposed construction. Other than requesting an additional 20-foot easement, SWBT did not indicate that there was any problem with the plans. But in June 2005, SWBT notified Andover that some of its underground cables did actually conflict with the development.

Andover originally demanded that SWBT relocate the conflicting cables at its own expense. SWBT refused, claiming that the existence of a legal easement precluded it from having to honor the demand. Because the cables were not in a public right-of-way, Andover had no authority to relocate the cables; it therefore had to rely on SWBT to do the work.

In July 2005, the parties signed an agreement in which Andover agreed to pay SWBT $67,977.23 to relocate the cables. The contract also contained a "Choice of Law and Arbitration" provision:

"Should any dispute arise between the parties concerning the subject matter of this agreement, or any term contained therein, the parties agree that the dispute or claim shall be submitted to binding arbitration before the American Arbitration Association. The parties further agree that the prevailing party in any such dispute will be entitled to recover attorney's fees and costs of arbitration."

Andover paid SWBT $67,977.23 before the relocation work began, in compliance with their contract. Andover stipulates that SWBT satisfactorily completed relocation of the underground utility cables.

In January 2006, Andover filed a petition seeking as damages from SWBT the cost of relocating the cables. Andover alleged that prior to commencement of construction, SWBT had negligently

failed to record its utility easement or provide Andover with notice of the location of the utilities. Had SWBT either recorded the easement or provided Andover with proper notice when SWBT reviewed the subdivision plans, the proposed plat could have been amended or modified to avoid conflict with the existing underground utilities. As a result, Andover was forced to pay to have the conflicting cables relocated. Andover alleged that SWBT's negligence was the "approximate [sic] cause of the costs associated with relocating said utilities." Therefore, Andover insisted that SWBT had been "unjustly enriched" by its payment and demanded judgment in that amount.

Shortly thereafter, SWBT made a formal, written demand on Andover to submit the dispute to arbitration in accordance with their agreement. Andover rejected SWBT's demand for arbitration, and SWBT filed a motion to stay proceedings and compel plaintiff to submit to arbitration and simultaneously filed its answer citing the arbitration provision in their agreement as an affirmative defense.

Ultimately, the district court denied SWBT's motion to stay proceedings and compel arbitration, ruling:

"This express claim of 'unjust enrichment' is an equitable claim which reaches the very essence of whether the contract obligating [the City] to pay is valid. The Court construes [the City's] cause of action as one seeking to nullify the purported contractual obligation to pay for [SWBT's] services, and for return of the amount previously paid. Pursuant to K.S.A. 5-401(b), this claim by [the City] is a case wherein 'grounds as exist at law or in equity for the revocation of a(ny) contract' are being asserted."

In a footnote, the district court commented that a provision mandating arbitration for a claim of tort is not enforceable under K.S.A. 5-401(c)(3). Despite describing Andover's initial pleading as a claim in tort, the district court interpreted the petition as an equitable claim under K.S.A. 5-401(b).

In this appeal, SWBT argues that Andover's claims are directly related to the subject matter of their agreement and the case should be submitted to arbitration. SWBT argues that the district court erred in failing to apply the threshold test established in *City of Wamego v. L. R. Foy Constr. Co.*, 9 Kan. App. 2d 168, 171, 675

P.2d 912, *rev. denied* 234 Kan. 1076 (1984): "[W]henever a motion to compel arbitration comes on for hearing, the threshold determination to be made by the court is whether an agreement to arbitrate exists and whether this agreement includes arbitration of the specific point at issue. [Citation omitted.]" SWBT also argues that had the district court applied this threshold test, it would have properly determined that the agreement here includes the claims raised in Andover's petition.

### Scope of Review and Other Points of Law

The interpretation and legal effect of written instruments are matters of law, over which an appellate court exercises unlimited review. *McGinley v. Bank of America, N.A.*, 279 Kan. 426, 431, 109 P.3d 1146 (2005). "Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect. [Citation omitted.]" *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 763, 27 P.3d 1 (2001).

" 'Generally, courts seek to uphold arbitration agreements even where the contract provisions are somewhat uncertain and indefinite.' " *Heartland Premier, LTD v. Group B & B, L.L.C.*, 29 Kan. App. 2d 777, 780, 31 P.3d 978 (2001). But arbitration clauses will not be enforceable "upon such grounds as exist at law or in equity for the revocation of any contract." K.S.A. 5-401(b). Any claim that would call the validity of the contract and its formation into question on grounds such as fraud, misrepresentation, mistake, illegality, and lack of consideration can avoid an arbitration clause. An arbitration provision is similarly unenforceable if it provides for arbitration of a claim in tort. K.S.A. 5-401(c)(3).

### Analysis

In order to solve this issue, we must examine the claims made by Andover in its petition against SWBT. Here, it made several references to the negligence of SWBT in its petition. Andover also provided a description of the duty it believed SWBT breached and how the damages resulted. Clearly Andover intended to make a claim in tort.

Under our Code of Civil Procedure, there is no requirement that pleadings state facts sufficient to constitute a cause of action. *Oller v. Kincheloe's, Inc.*, 235 Kan. 440, 447, 449, 681 P.2d 630 (1984). Rather, the petition need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for judgment. K.S.A. 60-208. The pleadings must be sufficient to give the defendant "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Producers Equip. Sales, Inc. v. Thomason*, 15 Kan. App. 2d 393, Syl. ¶ 3, 808 P.2d 881 (1991). The plaintiff is "entitled to have the petition interpreted liberally in his favor with respect to any indefiniteness or uncertainty in its allegations and to have all inferences reasonably to be drawn therefrom resolved in his favor." *Horton v. Atchison, T. & S. F. Rly. Co.*, 161 Kan. 403, 406, 168 P.2d 928 (1946).

We agree with SWBT that Andover did not make a claim for unjust enrichment. Other than stating that SWBT was "unjustly enriched," Andover provided no grounds to support such a claim. We point out that Andover did not contest the validity of the contract or indicate that SWBT repudiated the contract in any manner. We believe that Andover simply used this phrase in passing. Therefore, Andover did not properly plead a claim for unjust enrichment.

On the other hand, we believe that Andover did properly plead a claim in tort sufficient to put SWBT on notice of the nature of its claim as required by the Code of Civil Procedure. First we contrast contract and tort claims. PIK Civ. 3d 124.01-A provides:

"The essential elements of an action based on a contract are:
"(1) The existence of a contract between the parties;
"(2) Sufficient consideration to support the contract;
"(3) The plaintiff's performance or willingness to perform in compliance with the contract;
"(4) The defendant's breach of the contract; and
"(5) Damages to plaintiff caused by the breach."

In contrast, negligence is generally defined as "the lack of ordinary care. It is the failure of a person to do something that an ordinary person would do, or the act of a person in doing something an ordinary person would not do, measured by all the circumstances then existing." PIK Civ. 3d 103.01. To recover for negli-

gence, a plaintiff has the burden to prove the existence of a duty, breach of such duty, injury, and a causal connection between the duty breached and the injury. *Reynolds v. Kansas Dept. of Transportation*, 273 Kan. 261, Syl. ¶ 1, 43 P.3d 799 (2002).

Andover points out that SWBT satisfactorily relocated the cables and completed the work, thus fulfilling the terms of the agreement. Both parties got exactly what they bargained for. Accordingly, Andover would be unable to maintain an action for breach of contract against SWBT because it could not prove the fourth element of a breach of contract claim as listed above. But the claim asserted by Andover arises out of an alleged failure of SWBT to act prior to execution of the agreement. Andover insists that SWBT had a duty to register an easement or inform it of conflicting utilities, which SWBT breached. Therefore, Andover's claim could properly proceed as a claim for negligence.

In opposition, SWBT maintains that Andover's claims are directly related to the subject matter of their agreement and the case should be submitted to arbitration. SWBT argues that the district court erred in failing to apply the threshold test established in *City of Wamego*, 9 Kan. App. 2d at 171. SWBT also argues that had the district court applied this threshold test, it would have properly determined that the agreement includes the claims raised in Andover's petition. SWBT also relies on *Beeson v. Erickson*, 22 Kan. App. 2d 452, 456, 917 P.2d 901, *rev. denied* 260 Kan. 991 (1996), for the principle that a suit for breach of contract, though presented as a tort claim, is subject to the arbitration clause when the claim arose out of the work performed under the contract.

But it is clear that the specific point at issue in Andover's claim is SWBT's alleged breach of its duty to record or notify, which is a tort claim. The facts of this case do not pass the threshold test in *City of Wamego*. Failing to record an easement or to notify Andover of its buried cables is not the specific point in issue in the contract. Furthermore, this case can be distinguished from *Beeson* in which our Supreme Court held that the plaintiffs' cause of action arose out of a contract despite characterizing their claim as negligence. In *Beeson*, the plaintiffs contracted with the defendants to build a new garage and driveway. The contract contained a binding

arbitration clause, which applied to any action arising out of the contract. When the plaintiffs discovered flooding in their basement as a result of the improperly sloped driveway and the crushing of an underground drain tile, they filed a suit against the defendants for negligent construction. In holding that the arbitration clause should be enforced the court noted: "There is no question that plaintiffs' claims against defendants arose out of and are related to the contract. The damages plaintiffs claimed and recovered were caused by defendants in the process of doing construction work under a written agreement." 22 Kan. App. 2d at 457. The court further reasoned that the relationship between the parties was purely contractual in nature, and therefore allegations that the defendants did not properly complete the work was a claim for breach of contract improperly disguised as a tort claim.

Here, the damages claimed by Andover were *not* caused by SWBT in the course of doing the relocation work described in their agreement. Andover claims damages for the failures of SWBT prior to execution of the contract. The arbitration clause is not nullified by allowing Andover to proceed with its claim in tort. To the contrary, had any disputes arisen regarding the ability, cost, or timeliness of SWBT in relocating the cables, Andover would have been compelled to submit its claims to arbitration.

Even though the district court improperly interpreted the petition as a claim in equity rather than tort, the court arrived at the proper conclusion. Andover's tort claim is not a disguised contract claim and is outside the subject matter of the arbitration provision. In addition, Andover cannot be compelled to submit to arbitration because claims in tort are exempt under K.S.A. 5-401(c)(3). Therefore, the district court did not err in denying SWBT's motion to stay proceedings and compel arbitration.

Affirmed.