NOT DESIGNATED FOR PUBLICATION

No. 121,170

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

VIKKI GAMBRILL,
*Appellee*,

v.

BLUE VALLEY SURGICAL ASSOCIATES, LLC,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; PAUL C. GURNEY, judge. Opinion filed January 3, 2020.
Reversed and remanded with directions.

*Keynen J. (K.J.) Wall* and *Quentin M. Templeton*, of Forbes Law Group, LLC, of Overland Park,
and *William J. Skepnek*, of The Skepnek Law Firm, PA, of Lawrence, for appellant.

*Molly Brown Bartalos*, of McCausland Barrett & Bartalos PC, of Kansas City, Missouri, for
appellee.

Before BUSER, P.J., SCHROEDER and WARNER, JJ.

PER CURIAM: Vikki Gambrill, a former independent contractor for Blue Valley
Surgical Associates, LLC (BVSA), sued BVSA for breach of contract when it terminated
their pain management services agreement (Agreement) without compensating her. The
parties filed cross-motions for summary judgment. The district court granted summary
judgment in favor of Gambrill and denied BVSA's summary judgment motion. BVSA
now appeals. Upon review of the record, we disagree with the district court. The
Agreement clearly and unambiguously provided for Gambrill to receive a minimum draw

1

of $15,000 per month during the first three months of the Agreement, subject to repayment at a later time if her performance under the contract during the first three months did not generate income equal to or greater than the combined total of the minimum monthly draws. We reverse and remand with directions.

FACTS

In 2017, BVSA entered into the Agreement with Gambrill, a Certified Registered Nurse Anesthetist (CRNA). Under the Agreement, Gambrill would provide part-time pain management services on behalf of BVSA in exchange for compensation. The contract term began on October 16, 2017, and ended on October 15, 2018. Paragraph 3 established Gambrill's compensation under the Agreement as follows:

> "3. COMPENSATION/DRAW. Throughout the Initial Term of this Agreement, except as otherwise set forth herein, the Hospital agrees to pay Provider in accordance with the compensation schedule set forth in Exhibit A attached hereto and made a part of this Agreement; provided, however, Hospital shall pay to Provider a minimum amount equal to $15,000.00 to be paid monthly for 3 months, after which, payment will be based on services rendered. Any draw owed to Hospital after the 3 months will be withheld at an agreed to amount or percentage until repaid in full. Such minimum payment shall be calculated as part of Provider's total compensation monthly.
>
> "Throughout the term of this Agreement, except as otherwise set forth therein, BVSA will pay Provider for each office encounter or pain procedure performed by provider at Blue Valley Hospital, Inc. (BVH) in accordance with Exhibit A."

On four separate occasions between September 1, 2017, and October 15, 2017, Gambrill shadowed a physician, his nursing staff, and his physician assistant to informally orient and evaluate workflow. On the first day of the contract term, Gambrill arrived at BVSA's pain clinic to begin performing but was not scheduled as a provider. Shortly thereafter, BVSA's chief executive officer and chief financial officer informed Gambrill BVSA would compensate her under a "draw" rather than guaranteed payments

2

of $15,000 per month for the first three months of the contract term. Gambrill responded by emailing BVSA's chief financial officer, stating she would not accept the "draw." On November 1, 2017, an attorney for BVSA emailed Gambrill stating BVSA was terminating the Agreement without compensation because "no services have been rendered."

Paragraph 13 established termination procedures, providing:

"13. TERMINATION. Notwithstanding anything herein contained to the contrary, this Agreement may be terminated by BVSA for cause if Provider for any reason whatsoever (i) ceases to be licensed by the State of Kansas to engage in the practice of medicine; (ii) ceases being granted staff privileges by any health care facility at which the Provider performs medical services; (iii) fails to maintain in good standing Provider's controlled substance numbers and permits as required by federal and state agencies; (iv) fails to maintain professional liability insurance as required by paragraph 10; or (v) breaches any material term of this Agreement and fails to cure same within ten (10) days following written notice of such breach. Further, notwithstanding anything herein contained to the contrary, either party hereto may terminate this Agreement without cause by giving the other party sixty (60) days written notice. No reason need be given in such notice. This Agreement shall also terminate concurrent with the dissolution of BVSA or the dissolution of the Provider."

Paragraph 14 established the effect of terminating the Agreement, providing:

"14. EFFECT OF TERMINATION OF AGREEMENT. In the event of the termination of this Agreement for any reason whatsoever, except as otherwise set forth in this Agreement, all obligations of BVSA shall cease upon the effective date of termination except that any compensation that is payable to Provider shall be paid in accordance with Paragraph 3 herein. If this Agreement is terminated for any reason whatsoever, BVSA shall retain ownership of all accounts receivable and unbilled fees attributable to services for BVSA rendered by Provider. Further, BVSA owns all patient records, patient files and related patient information and documentation with respect to

3

all patients of BVSA including any and all patients seen by Provider. Further, at the time of the termination of this Agreement, Provider shall return any and all equipment in Provider's possession which was provided by BVSA including, not by way of limitation, the pager, and any and all other equipment provided by BVSA."

On November 11, 2017, Gambrill sued BVSA for breach of contract, arguing BVSA breached when it terminated the Agreement without compensation and without notice. BVSA moved for summary judgment, arguing no issue of material fact existed as to Gambrill's breach of contract claim, entitling it to judgment as a matter of law. It attached the Agreement, email correspondence between the parties, and the parties' interrogatories. In support of its motion, BVSA argued it did not breach when it failed to compensate Gambrill under the Agreement because paragraph 3 provided for a draw subject to repayment, not minimum monthly payments of $15,000 for the first three months of the contract term. It also argued Gambrill's "failure to perform deprive[d] the agreement of consideration."

Gambrill also moved for summary judgment, arguing undisputed facts showed BVSA breached the Agreement as a matter of law. She attached to the motion for summary judgment her petition, BVSA's answer, the parties' interrogatories, the Agreement, emails between the parties, and an affidavit signed by Gambrill. She argued BVSA breached when it failed to compensate her under the Agreement, asserting paragraph 3 provided for minimum monthly payments of $15,000 for the first three months of the contract term. She also argued under paragraph 13 BVSA should have given her 10 days' notice if it intended to terminate her with cause or 60 days' notice if it intended to terminate her without cause, but it failed to do so.

Both parties filed memorandums of law in response to the other party's summary judgment motions and in further support of their own summary judgment motions.

4

In its response to Gambrill's summary judgment motion, BVSA argued for the first time: (1) The parties understood Gambrill could prescribe management medicine and independently deliver pain management services as a licensed CRNA when they entered into the Agreement, and (2) Gambrill, as a licensed CRNA, did not have the authority to prescribe management medicine and to independently deliver pain management services under Kansas law. On this basis, BVSA argued material facts showed the Agreement was unenforceable under various contract defenses, including failure of consideration, mutual mistake, impracticability/impossibility of performance, frustration of purpose, and material breach. In support, BVSA attached email correspondence between BVSA's chief executive officer and Gambrill, dated August 9, 2017, in which Gambrill stated under "[c]urrent Kansas law, CRNA's do NOT have prescriptive authority . . . . There is current legislative action to change this and I will be making a phone call this afternoon to get more specifics."

In her motion in further support of summary judgment, Gambrill responded, arguing: (1) Although CRNAs could not prescribe under Kansas law, the Agreement did not require she have authority to prescribe, and (2) she could deliver pain management services under Kansas law and under the Agreement's terms.

The district court set both motions for hearing. The district court's bench notes show the parties appeared and a written order was later filed. However, the record does not include a transcript of the hearing.

In a written order filed the next day, the district court granted summary judgment in favor of Gambrill. The court found, as a matter of law, paragraph 3 provided for a minimum monthly payment of $15,000 for the first three months of the contract term. Specifically, it reasoned that in paragraph 3: "The use of 'any' in the Agreement suggests that [Gambrill] only has to repay a draw if a draw has been previously established; the adjective 'any' does not mandate the existence of the noun that it modifies." Additionally,

5

the district court found BVSA's lack of consideration argument unpersuasive because uncontroverted facts showed Gambrill was willing to perform under the Agreement, but she was not scheduled as a provider by BVSA.

ANALYSIS

BVSA argues the district court erred in denying its motion for summary judgment because paragraph 3 unambiguously provided for a draw, not minimum monthly payments of $15,000, for the first three months of the contract term. Alternatively, BVSA argues paragraph 3 is subject to at least two contradictory interpretations and is therefore ambiguous.

This court applies the same standards the district court applied in deciding whether summary judgment is appropriate. To affirm the district court's grant of summary judgment, this court must find the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In doing so, this court must resolve all facts and inferences that may reasonably be drawn from the evidence in favor of the party against whom the summary judgment was sought—here, BVSA. If reasonable minds could differ as to the conclusions drawn from the evidence, this court must reverse the district court's grant of summary judgment. See *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

To prevail on a breach of contract claim, Gambrill needed to establish the following elements: (1) the existence of a contract between the parties; (2) sufficient consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) the plaintiff suffered damage caused by the breach. *City of Andover v. Southwestern Bell Telephone*, 37 Kan. App. 2d 358, 362, 153 P.3d 561 (2007). On appeal, the only element in dispute is whether

BVSA breached when it terminated the Agreement without compensating Gambrill. To determine whether BVSA's failure to compensate Gambrill constituted a breach, this court must interpret the parties' written agreement.

The primary rule for interpreting written contracts is to ascertain the parties' intent. If the contract's terms are clear, the intent of the parties is to be determined from the contract language without applying the rules of construction. *Stechschulte v. Jennings*, 297 Kan. 2, 15, 298 P.3d 1083 (2013). Contracts should not be interpreted merely by isolating one particular sentence or provision, but by construing and considering the entire instrument within its four corners. The law favors reasonable interpretations. Courts should avoid interpreting contracts in a manner contrary to the apparent purpose of the contract's terms and/or in a way that would lead to an absurd result. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013).

However, if a written contract's language is ambiguous, extrinsic or parol evidence may be used to construe it. *Waste Connections of Kansas*, 296 Kan. at 963. A contract is ambiguous when the "words used to express the meaning and intention of the parties are insufficient in that the contract may be understood to reach two or more possible meanings." *Holly Energy, Inc. v. Patrick*, 239 Kan. 528, 534, 722 P.2d 1073 (1986). When a contract's language is ambiguous and the intent of the parties cannot be ascertained from undisputed extrinsic evidence, summary judgment is inappropriate. *Waste Connections of Kansas*, 296 Kan. at 964.

Here, the parties' dispute hinges on whether paragraph 3 provides for a draw, subject to repayment, or guaranteed monthly payments of $15,000 for the first three months of the contract term. Again, paragraph 3 provides:

7

"3. COMPENSATION/DRAW. Throughout the Initial Term of this Agreement, except as otherwise set forth herein, the Hospital agrees to pay Provider in accordance with the compensation schedule set forth in Exhibit A attached hereto and made a part of this Agreement; *provided, however, Hospital shall pay to Provider a minimum amount equal to $15,000.00 to be paid monthly for 3 months, after which, payment will be based on services rendered. Any draw owed to Hospital after the 3 months will be withheld at an agreed to amount or percentage until repaid in full.* Such minimum payment shall be calculated as part of Provider's total compensation monthly.

"Throughout the term of this Agreement, except as otherwise set forth therein, BVSA will pay Provider for each office encounter or pain procedure performed by provider at Blue Valley Hospital, Inc. (BVH) in accordance with Exhibit A." (Emphasis added.)

Generally, a "draw" is type of salary advance or loan charged against the commissions or incentive-based pay an employee later earns. There are two main types of draws, nonrecoverable and recoverable. A recoverable draw is a loan from the company to the employee that is carried forward indefinitely until the employee makes sufficient commissions to repay the loan. With a nonrecoverable draw, the company forgives the draw if the employee has not made sufficient sales to repay the loan within a set time. 1 Snyder, Compensation and Benefits § 3:5 (Thomas Reuters 2019). Here, paragraph 3 provides for a recoverable draw because it states: "Any draw owed to Hospital after the 3 months will be withheld at an agreed to amount or percentage *until repaid in full*." (Emphasis added.)

Following the reasoning of the district court, Gambrill argues paragraph 3 dictates how a draw would have been applied if a draw existed, but paragraph 3 itself does not require the existence of a draw. In contrast, BVSA argues paragraph 3 provides for a minimum draw of $15,000 per month for the first three months of the contract term that Gambrill would have to repay at an agreed upon amount depending on her earnings in the initial three-month period. BVSA's interpretation of paragraph 3 is compelling here.

Read as a whole, the plain language of paragraph 3 reflects the parties' intent to compensate Gambrill under a draw during the first three months. The first sentence establishes the general rule that Gambrill's compensation under the Agreement would depend on her productivity, or the services she rendered, as identified and attached in Exhibit A. It then provides an exception to the general rule: BVSA shall pay Gambrill "a *minimum* amount equal to $15,000.00" per month for the first three months of the contract term. (Emphasis added). The use of the word "minimum" is significant. It demonstrates Gambrill's compensation during the initial three-month period was not set at a fixed amount. Rather, the $15,000 was a base payment, and depending on the services Gambrill rendered, BVSA may have been obligated to pay Gambrill more based on the income she generated. This compensation scheme is in line with a draw.

Under a draw, if the value of Gambrill's services during the initial three-month period exceeded $15,000 per month in compensation, Gambrill's compensation would be based solely on her productivity. If, however, Gambrill's services during that period fell below $15,000 per month in compensation, Gambrill would still receive $15,000, but she would be required to pay back any deficiency between the value of her services and the $15,000 at an agreed upon amount in the future.

The second sentence of paragraph 3 provides: "*Any* draw owed to Hospital after the 3 months will be withheld at an agreed to amount or percentage until repaid in full." (Emphasis added). The apparent purpose of this sentence is to provide for the situation in which the value of Gambrill's services during the initial three-month period fell below $15,000 per month in compensation. The adjective "any" describes the word "draw" in a nonspecific sense because the parties could not have foreseen when they executed the Agreement whether Gambrill's compensation would meet the minimum monthly draw of $15,000. If Gambrill did not meet the minimum $15,000 draw, then she would pay it back at an agreed upon amount in the future. However, if she generated more income, then she would be paid the additional earnings over $15,000.

9

Contrary to the district court's conclusion, the second sentence does not require the parties to agree to a draw outside of the Agreement. Instead, paragraph 3 provided for a minimum monthly draw during the initial three-month period. A separate agreement was only necessary *if* Gambrill's earnings during the initial three months did not meet or exceed the *minimum* monthly draws. However, that amount was to "be calculated *as part of* [Gambrill's] *total* compensation monthly." (Emphases added.) And Gambrill's "total compensation" was to be calculated "in accordance with the compensation schedule set forth in Exhibit A," which based compensation upon actual services rendered.

The district court erred as a matter of law when it concluded the Agreement unambiguously provided for guaranteed payment during the initial three-month period. Further, because the Agreement called for a draw based on the performance/income generated, the timing of BVSA's notice of termination provides no relief to Gambrill under paragraphs 13 and 14 of the Agreement because no income was ever generated. The district court should have granted BVSA's motion for summary judgment and denied Gambrill's motion for summary judgment.

On remand, the district court is directed to enter judgment on behalf of BVSA. In light of our decision, BVSA's other arguments regarding the district court's failure to consider the contract defenses it presented in response to Gambrill's motion for summary judgment are now moot.

Reversed and remanded with directions.