(655 P.2d 471)
No. 54,072

STATE OF KANSAS, *Appellant,* v. THOMAS CONSTRUCTION COMPANY, INC., and THE TRAVELERS INDEMNITY COMPANY, *Appellees.*

Opinion filed December 23, 1982.

*William V. North,* of North, Lancaster & Dickson, of Overland Park, and *Jerry W. Dickson,* of North, Lancaster & Dickson, of Overland Park, special assistant attorney general, for the appellant.

*Edward M. Boddington, Jr.,* of Boddington & Brown, of Kansas City, Kansas, *Kevin E. Glynn,* of Miller & Glynn, of Kansas City, Missouri, and *Robert A. Babcock,* of Margolin and Kirwan, of Kansas City, Missouri, for the appellees.

Before SPENCER, P.J., PARKS, J., and HARRY G. MILLER, District Judge Retired, assigned.

MILLER, J.: This is an appeal by the State of Kansas from the order of the district court dismissing the State's action against the defendants Thomas Construction Company, Inc., and The Travelers Indemnity Company for damages for defective work in connection with the construction of the Basic Science Facility located on the campus of the University of Kansas Medical Center in Kansas City.

Among the provisions incorporated in the contract by reference was a standard arbitration clause providing:

"All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise."

Travelers Indemnity Company (Travelers), prior to the commencement of construction, as security for its principal Thomas Construction Company, Inc. (Thomas), executed a performance bond.

In May of 1977, Thomas filed a demand for arbitration of its claim for damages alleged to have resulted from delays caused by the State, lack of coordination by the State, and various extras. The State declined to arbitrate, and instead, filed an injunction suit against Thomas in the District Court of Wyandotte County and obtained a temporary restraining order. The injunction suit proceeded to trial, and on February 15, 1978, the restraining order was dissolved by the trial court.

On April 23, 1979, Thomas' claims were presented to arbitration in a hearing before a panel of three arbitrators, who subsequently advised that they had determined that damages should be awarded to Thomas on its claims in the amount of $148,533.04. This award was not, however, finalized. Before and during these proceedings, the parties and the arbitrators agreed that the State would later file a counterclaim against Thomas on a claim for defective workmanship.

On May 15, 1979, the State filed its counterclaim against Thomas in arbitration, alleging damages in the sum of $308,545.15 due to various items of defective construction. A hearing on the counterclaim was set before the arbitration panel; however, on September 6, 1979, the State requested a continuance. Thomas objected to a continuance and the continuance was denied. Thereafter, the State moved to dismiss its counterclaim without prejudice, and on September 7, 1979, an order dismissing the counterclaim "without prejudice" was entered.

The arbitrators then executed and finalized their previous award in favor of Thomas on the claims that had been submitted to them. The award states in part: "This award is in full settlement of all claims submitted to this arbitration."

Thomas thereafter filed its petition to confirm the arbitration award in the District Court of Wyandotte County. The State did not seek to modify or vacate the award of the arbitrators. The

court confirmed the award on December 4, 1979, and the judgment was subsequently paid in full by the State.

The present action was filed by the State on March 7, 1980, against Thomas and Travelers, seeking to recover for some of the alleged items of defective construction which had been asserted in its counterclaim in arbitration.

Thomas and Travelers filed their motion to dismiss or in the alternative for summary judgment. After a hearing, the trial court denied the motion for summary judgment, but sustained the motion to dismiss on the ground that since the goals of arbitration proceedings are consistent with the policy behind compulsory counterclaim rules in civil proceedings (*i.e.*, the final and expeditious disposition of *all* differences between the parties), the plaintiff's petition was tantamount to the refiling of a compulsory counterclaim in a separate action, which is not permitted.

The trial court also ruled that the State had ample time and opportunity to prepare and present its counterclaim in the proper forum of arbitration, and that its petition was, in effect, a collateral attack on the arbitration award which had been confirmed by the trial court and was final.

On appeal the State contends that the Rules of Civil Procedure were not applicable to the arbitration proceedings, and that the trial court's reliance upon the rules pertaining to compulsory counterclaims was in error.

The parties, through their contract, agreed that the rules which were to govern the arbitration proceedings were the Construction Industry Arbitration Rules of the American Arbitration Association. Section 8 of these rules provides:

"Section 8. CHANGE OF CLAIM OR COUNTERCLAIM—After filing of the claim or counterclaim, if either party desires to make any new or different claim or counterclaim, same shall be made in writing and filed with the AAA, and a copy thereof shall be mailed to the other party who shall have a period of seven days from the date of such mailing within which to file an answer with the AAA. However, after the arbitrator is appointed no new or different claim or counterclaim may be submitted without the arbitrator's consent."

A fair reading of this section leads to the conclusion that counterclaims are not compulsory in the arbitration setting. The effect of the section is to require that the claims to be submitted to arbitration shall be filed promptly, and to preclude new and different claims from being proffered, without the arbitrators' consent, after the arbitrators have been appointed. The obvious

intent of this section is to require the issues to be submitted to arbitration to be identified and to avoid surprise. There is nothing about this provision that requires, as does K.S.A. 60-213(*a*), that a party "shall state as a counter claim" any claim which he may have against the opposing party "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."

The arbitrators derived their authority and jurisdiction from the contract of the parties. *Great Scott Supermkts., Inc. v. Local U. No. 337, Teamsters*, 363 F. Supp. 1351 (E.D. Mich. 1973). The contract in the present case provided that the rules which were to govern arbitration proceedings were the Construction Industry Arbitration Rules of the American Arbitration Association, unless otherwise mutually agreed. In the absence of any such mutual agreement that the Rules of Civil Procedure were to apply, such rules were not applicable to the arbitration proceeding, and it was error to dismiss the State's claim on the ground that it was tantamount to a compulsory counterclaim as defined in K.S.A. 60-213(*a*).

It is true that if the State's claim was being asserted by way of a defense to Thomas' arbitration claim, then the State would be precluded from asserting it now, since the arbitrators' award, when confirmed by the court, has the same res judicata effect as any judgment as to all matters encompassed within the claims submitted. *Midessa Television Co. v. Motion Pictures for Television*, 290 F.2d 203 (5th Cir.), *cert. denied* 368 U.S. 827 (1961).

The State's claim, however, is not offered in defense of Thomas' arbitration claim. The State's claim is a separate and distinct claim for damages suffered by the State due to defective construction work performed by Thomas. As such, it is not barred by the doctrine of collateral estoppel as asserted by the defendants. *Montana v. United States*, 440 U.S. 147, 59 L.Ed.2d 210, 99 S.Ct. 970 (1979); *Blonder-Tongue v. University Foundation*, 402 U.S. 313, 28 L.Ed.2d 788, 91 S.Ct. 1434 (1971).

Simply stated, the State's claim was never submitted or addressed in the arbitration proceedings. By agreement, an arbitration hearing was held and the validity of Thomas' claim was determined *prior* to the State's assertion of its claim for damages arising out of defective workmanship. No further hearing was

held, and the State's claim was withdrawn and dismissed without prejudice.

The rule is stated in 5 Am. Jur. 2d, Arbitration and Award § 147, p. 629:

"The parties are concluded only as to those matters included in the submission as to which there has been a hearing, and which are covered by the award."

This rule does not dispose of this appeal, however. In making its rulings, the trial court correctly observed that the proper forum for the State's action was in arbitration and not the district court. We agree.

The parties contracted that all disputes arising out of or related to the construction contract "shall be decided by arbitration . . . unless the parties mutually agree otherwise." There is nothing in the record to show that Thomas has ever consented that the State's claim may be tried elsewhere, nor are any grounds asserted as a basis for revocation or relief from the agreement. The agreement to arbitrate is valid and enforceable. K.S.A. 1981 Supp. 5-401.

Travelers' presence in arbitration proceedings is not necessary to a determination of the State's claim against Thomas, since the State has no claim against Travelers unless and until it establishes its claim against Thomas.

Under these circumstances, Thomas cannot be compelled to litigate the State's claim in court without its consent. The order of the trial court dismissing the State's action is therefore affirmed.