13 Kan. App. 2d 188 (1988)
766 P.2d 196
L.R. FOY CONSTRUCTION CO., INC., Appellant,
v.
PROFESSIONAL MECHANICAL CONTRACTORS, et al., Appellees.
No. 62,268
Court of Appeals of Kansas.
Opinion filed December 22, 1988.
William L. Mitchell, of Mitchell and Henry, of Hutchinson, for the appellant.
Wyatt A. Hoch, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for the appellees.
Before DAVIS, P.J., JACK L. BURR, District Judge, assigned, and DANIEL L. HEBERT, District Judge, assigned.
DAVIS, J.:
L.R. Foy Construction Company, Inc., (Foy) a general contractor, brought this action against Professional Mechanical Contractors (PMC), its subcontractor, and PMC's surety, the Universal Surety Company, seeking both compensatory and punitive damages for PMC's alleged negligence in performing its contractual duties. The trial court granted PMC summary judgment, holding that Foy's claims were barred by a final arbitration award resolving all contractual disputes between Foy and PMC. We affirm.
In the spring of 1983, Foy contracted with the City of Hutchinson to renovate and expand the Hutchinson Waste Water Treatment Plant (the "project"). Foy subcontracted much of the piping and mechanical work on the project to PMC. Article II of the Foy-PMC subcontract provided:
"All disputes and claims of every kind whatsoever, shall be submitted to arbitration in accordance with the provisions as contained in the by laws and rules of the American Arbitration Association for Construction."
Article XII of the subcontract required PMC to furnish a bond for performance and for payment of labor and material. PMC obtained its bond from the Universal Surety Company.
PMC began work on June 6, 1983. Because of Foy's nonpayment of construction progress payments, PMC stopped work on March 18, 1985. On April 10, 1985, PMC filed a demand for arbitration against Foy. C. Robert Bell, a Wichita attorney, Harry R. Rutledge, a Hutchinson architect, and Robert E. Smith, a Wichita architect, were appointed as arbitrators in May 1985.
Foy answered PMC's arbitration demand and filed a counterclaim against PMC. Foy alleged that it had incurred more than $600,000 in "expenses, damages, and delays because PMC failed to do its work in a good workmanlike manner." Foy also alleged that it was "entitled to punitive damages for [PMC's] willful and *190 wanton actions in the conduct of its work and attempts to cover up deficiencies in its work." In the alternative, Foy alleged that PMC had "negligently and grossly negligently [sic] conducted its work," and that Foy was therefore entitled to $600,000 in compensatory damages and $500,000 in punitive damages.
On July 15, 1985, Foy filed suit on the performance bond against Universal Surety in Reno County. Foy acknowledged that the PMC-Foy dispute had been "duly submitted to arbitration which is now pending before the American Arbitration Association," but it took the position that an action against the surety was proper since the surety was not a party to the arbitration proceedings. Universal replied that it was not a party to arbitration because its interests were identical to PMC's. It admitted that under Kansas law, it would be bound by the result of the PMC-Foy arbitration. Universal moved to stay the action against it until the PMC-Foy arbitration had been completed. The record reveals no further activity in this case until August 1987.
On December 18, 1985, before the arbitrators had conducted any evidentiary hearings, Foy filed an action against PMC, the American Arbitration Association, the three arbitrators, and three other subcontractors on the project. Foy alleged that its counterclaim in the arbitration proceeding
"claims, among other claims, damages for the negligent acts of PMC, the grossly negligent acts of PMC and punitive damages and that the other subcontractors have indicated to plaintiff that they will claim damages against the plaintiff [Foy] because of the various actions and non-actions of PMC, but that the AAA and its arbitrators are unable to hear such claims, have disallowed their presence in the arbitration proceedings, thus preventing the plaintiff from having a full and complete hearing on all issues involving PMC, the sureties on the project and the other subcontractors on the Project."
Foy also repeated its allegations in the arbitration proceeding that PMC had "failed to do its work in a good workmanlike manner," or alternatively, that PMC had "negligently or grossly negligently [sic] conducted its work," and that Foy was entitled to $600,000 in compensatory damages and $500,000 in punitives. Foy sought a permanent injunction against arbitration, but otherwise asserted no claims against the other defendants. A temporary restraining order was issued the same day.
On January 2, 1986, PMC filed a motion to vacate the restraining order, to compel arbitration, to dismiss, and to assess *191 sanctions. At a hearing on January 10, 1986, the court vacated the restraining order and ordered Foy back to arbitration.
On January 31, 1986, PMC filed its answer to Foy's petition. PMC alleged that it had ceased work because Foy had breached the contract by refusing to pay PMC over $260,000 in progress payments due and owing. PMC also denied Foy's allegation that the arbitrators were unable to address all of the issues in the PMC-Foy dispute, stating:
"The arbitration panel has agreed to address all issues raised in PMC's arbitration demand and Foy's counterclaim, except for the question of punitive damages, which Foy has waived by agreeing to arbitrate all claims and disputes between the parties."
The arbitrators held evidentiary hearings on the PMC-Foy dispute on January 20-23, January 31, and February 1, 1986. On February 28, 1986, the arbitrators rendered a decision in favor of PMC against Foy and its surety. The arbitrators found:
"2. The scope of the work to be undertaken by PMC is set forth as clearly as may be in the sub-contract and the attachment thereto of PMC, however, there existed considerable confusion at all times in the mind of all the FOY witnesses and of the engineer from WILSON & COMPANY, as to the exact scope of the work contracted to be performed by FOY.
"3. The Arbitrators find that there was no effective scheduling of the work by FOY....
"4. The Arbitrators find that the applications for payment by PMC were duly submitted at the times and in the amounts as set forth on Plaintiffs Exhibit 8 and that the payments as set forth on said Schedule were received at said time. The Arbitrators further find that payments were made by the owner to FOY, which included allowance for said amounts, but which were not transmitted by FOY to PMC in a timely fashion.
....
"7.... The Arbitrators specifically find that the witness, L.R. FOY, estimate of the amount of delay caused by the activities of PMC overall is inherently incredible and unsupported by the evidence and there is no other means provided by which the Arbitrators can calculate any delay days attributable to any materials slowness or any other activity on the part of PMC.
"8. The Arbitrators specifically find that the testimony of the witness, COOK [Foy's project supervisor], was confusing and so full of demonstrable errors and omissions as to be unreliable and totaling [sic] lacking in credibility and probative value.
"9. The Arbitrators find that the testimony of the witnesses, LYNE, MOORE and JONES, was confusing and self contradictory concerning the supervisory authority and supervision on this project and the authority for co-ordination of this project. The Arbitrators find that such confusion was typical of all levels of FOY management in connection with supervision and co-ordination of this entire project.

*192 "10. The Arbitrators find that the contract was intended by the parties to be divisible both at the contract and the subcontract level by virtue of the provisions for periodic progress payments.
"11. The Arbitrators find that by February 2nd, 1985, PMC had substantially performed....
....
"13. The Arbitrators find that PMC was entitled to withdraw from the project on Monday, March 18, 1985, by reason of FOY'S non-payment of progress payments over-due at that time all in violation of the subcontract between the parties.
....
"16. The Arbitrators find that the total contract price together with the change orders was $754,393.00, from that should be subtracted the amount of $473,851.00, which represented the total amounts paid by FOY prior to this Arbitration Hearing. The next item to be subtracted from the contract balance is the cost to complete which the Arbitrators find to be $30,000.00, including testing and punch list items and warranty work.... The back charges of $27,854.59, substantiated by Plaintiffs Exhibit 98 should be altered by the addition of $2,365.00 for asphalt and concrete pavement and concrete curb replacement in accordance with the contracts and agreements of the parties making the total figure $30,219.59 for allowable back charges.... The Arbitrators find that the total amount due after offsets and credits set forth above from FOY to PMC as of January 20, 1986, was $198,661.29, to that should be added the interest at 10% to March 1, 1986, in the amount of $28,314.88 making a total due as of March 1, 1986, of $226,976.17.
....
"NOW, THEREFORE, the Arbitrators award to PMC the amount of $226,976.17, as of February 20, 1986, from the responding parties to this Arbitration.
"This Award is in full settlement of all claims and counter-claims submitted to this Arbitration."
The arbitrators later increased the award to PMC by $5,805.52 to correct an error in calculating the amount of the award.
On May 29, 1986, the Sedgwick County District Court confirmed the arbitration award in favor of PMC and entered judgment against Foy and its surety for $238,457.74, plus interest. Neither Foy nor its surety appealed from this judgment.
On August 11, 1987, PMC filed a motion in Reno County District Court to consolidate Foy's action against Universal with Foy's action against PMC. PMC and Universal also filed a motion for summary judgment in the consolidated case on the grounds of issue preclusion and claim preclusion.
On November 30, 1987, the trial court issued a memorandum opinion granting judgment in PMC's favor. The court stated:

*193 "The court adopts the uncontroverted statements of fact of defendant as its facts in this matter. The plaintiff attempts to relitigate the facts of the subcontract at issue here by stating that the tort claims for negligence survived the arbitration proceeding. The duties of the defendant arose under the contract that existed between the plaintiff and defendant. Those duties were fully arbitrated in the 6 day hearing that led to the arbiters' award that was approved by the Sedgwick County Court.
"Plaintiff is precluded by issue preclusion from relitigating that matter in this court. The court adopts the legal reasoning set forth in defendants' brief as if fully set out herein."
On January 28, 1988, the court adopted a detailed journal entry prepared by PMC.
Jurisdiction
Before reaching the merits, we pause to consider PMC's argument that we lack jurisdiction to decide this appeal.
Although the trial court issued an opinion in PMC's favor on November 30, 1987, judgment was not entered until the journal entry was filed on January 28, 1988. K.S.A. 60-258. This two-month delay came about because Foy objected to PMC's proposed journal entry and proposed additional findings of fact. After the journal entry was approved and filed, Foy filed a motion for a new trial. This motion essentially repeated the arguments Foy had made in its earlier motions. The trial court denied this motion and imposed sanctions against Foy for filing it. Within 30 days after this motion was denied, Foy filed its notice of appeal.
PMC argues that Foy's notice of appeal was not timely filed. It admits that under K.S.A. 60-2103(a) a timely motion for new trial tolls the time for filing an appeal; however, it argues that we should create an exception to this statutory rule when a post-trial motion duplicates a motion previously filed. PMC cites no authority in support of such an exception and we decline to recognize such an exception here. Foy's appeal was timely filed according to the literal provisions of K.S.A. 60-2103(a). We, therefore, have jurisdiction to decide this appeal.
MERITS
Foy contends that its claims in the present civil action are not barred by the arbitrators' award because they were not expressly ruled on by the arbitrators. The arbitrators ruled, after considering extensive evidence, that PMC had substantially performed and that Foy was the breaching party. This finding bars the *194 present action because Foy cannot prevail in this civil action without establishing, contrary to the arbitrators' finding, that PMC was the breaching party. Accordingly, we hold that the trial court did not err in granting summary judgment in favor of PMC. We further hold that the trial court's decision may be affirmed on the basis of either claim preclusion or issue preclusion.
Claim Preclusion
The Supreme Court has recently defined the doctrine of claim preclusion, which it also called res judicata, as follows:
"Claim preclusion prevents parties from relitigating a cause of action that has been finally adjudicated. It is founded on the principle that the party, or some other party in privity, has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction. [Citations omitted.] An issue is res judicata when four conditions concur: (1) identity in the things sued for, (2) identity of the cause of action, (3) identity of the persons and parties to the action, and (4) identity in the quality of the persons for or against whom the claim is made." Jackson Trak Group, Inc. v. Mid States Port Authority, 242 Kan. 683, 690, 751 P.2d 122 (1988).
These four identities are present in this case. Foy counterclaimed in the arbitration proceeding for the same damages it seeks now. Its present cause of action and its arbitration counterclaim were both based on PMC's alleged poor workmanship. Foy and PMC were parties to both the present action and the arbitration proceeding. Universal Surety, although not a party to arbitration, is in privity with PMC. Finally, there is an identity in the quality of the persons for or against whom the claim is made. Foy and PMC had the same incentive to litigate their claims in arbitration as they do now.
Foy attempts to avoid the application of claim preclusion by asserting that identity in the cause of action is lacking. Foy reasons that its present claims sound in tort and that these tort claims have not previously been litigated since tort claims may not, under K.S.A. 1987 Supp. 5-401, be arbitrated.
A claim in tort arises when a party violates some duty imposed on him by law. In the present case, PMC owed Foy no duties except those defined in the contract between them. PMC's liability, if any, for its alleged failure to perform its contractual duties lies solely in contract. See Ford Motor Cred. Co. v. Suburban Ford, 237 Kan. 195, 203-04, 699 P.2d 992, cert. denied 474 U.S. 995 (1985) (claims in tort may not be asserted against a party for exercising its rights under a contract between the *195 parties); Isler v. Texas Oil & Gas Corp., 749 F.2d 22, 24 (10th Cir.1984) (action for breach of contractual duty lies in contract, regardless of whether the breach arises "from inattention, a disagreement over the existence of the duty, a dispute over the nature of the duty, or a simple unwillingness to perform the duty"). The facts do not support a claim in tort for breach of contract.
Foy also attempts to avoid the application of claim preclusion by arguing that it suffered damages arising from PMC's alleged breach but that the amount of the damages could not be determined until the completion of the project, which was after the date of the arbitration hearing. Foy specifically complains that the arbitrators did not consider "warranty, final punch list items, and other discrepancies and liquidated damages." The record of the arbitration proceeding shows, however, that the arbitrators did consider these items. The arbitrators subtracted $30,000 from their award to PMC for Foy's "cost to complete," including "testing and punch list items and warranty work."
We conclude that the only claims Foy has against PMC sound in contract, not tort. These claims were fully litigated before the arbitrators. The arbitrators decided against Foy. Their award was confirmed by the Sedgwick County District Court and Foy did not appeal. Accordingly, the doctrine of claim preclusion bars Foy's attempt to relitigate these same claims in the present action.
Issue Preclusion
The doctrine of issue preclusion, which is also known as collateral estoppel, prevents the relitigation of issues conclusively determined in an earlier action. Issue preclusion may be asserted when a party can show that the issue was determined by a prior judgment on the merits, that the issue was actually determined and necessary to support the judgment, and that the parties are the same or in privity. Jackson Trak Group, 242 Kan. at 690. It may be based on a judgment confirming an award of arbitration. State v. Thomas Constr. Co., 8 Kan. App.2d 283, 286, 655 P.2d 471 (1982).
Assuming that Foy may assert tort claims for breach of contract, we conclude that these claims are barred by issue preclusion. The gist of Foy's negligence claims is that PMC's work was substandard. In finding, however, that PMC had substantially *196 performed its contractual duties, the arbitrators necessarily found that the quality of PMC's work substantially met the standards called for by the contract. This finding bars the present action. It is not possible for PMC to fulfill its contractual obligation to employ good workmanship and, at the same time, breach the same duty in tort.
Whether Summary Judgment was Properly Granted
Foy argues that it "has controverted the facts necessary to sustain a Motion for Summary Judgment" based on the arbitrators' award. This assertion rests, however, upon a mistaken understanding of the trial court's decision. The trial court granted summary judgment based on the preclusive effect of the arbitrators' award. The preclusive effect of that award presents a pure question of law. The facts material to that question are contained entirely in the record: PMC's demand for arbitration, Foy's answer and counterclaim, the decision of the arbitrators, the confirmation of the award in Sedgwick County District Court, and the pleadings in the present consolidated case. Foy cannot and does not controvert these facts.
Foy also argues that summary judgment is not proper until the parties have had a chance to conduct discovery. However, there is no reason to conduct discovery in the present case because nothing that might be learned through discovery could change the outcome of the present case. All of the material facts are contained in the record of the arbitration proceeding.
Finally, Foy complains that the court did not specifically address the questions of whether Foy's claims for damages arising after arbitration were included in the arbitration award, whether punitive damages could be recovered in contract actions, and whether the arbitration afforded merely "interim relief." We believe that these questions were adequately addressed when the court held that all of Foy's claims had been resolved against Foy in arbitration. K.S.A. 60-252(a); Rule 165 (1988 Kan. Ct. R. Annot. 102); cf. U.S.D. No. 215 v. L.R. Foy Constr. Co., 237 Kan. 1, 2-3, 697 P.2d 456 (1985) (In making a final decision on all issues between the parties, arbitrators need not specifically address each of the issues and contentions set forth by a party in its proposed findings of fact and conclusions of law.).
Affirmed.