William **ALEXANDER,** and John Hall and Carolyn Hall, Plaintiffs,

v.

**CERTIFIED MASTER BUILDER CORPORATION, Defendant.**

**Civil Action No. 96–2515–GTV.**

United States District Court, D. Kansas.

March 26, 1999.

Patricia L. Lear–Johnson, Longan & Associates, Leawood, KS, S.W. Longan, III, Longan & Associates, Leawood, KS, for William Alexander.

Robert A. Babcock, Kara Trouslot Stubbs, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, for John Hall, Carolyn Hall.

Don R. Lolli, Swanson, Midgley, Gangwere, Kitchin & McLarney, LLC, Kansas City, MO, Craig T. Kenworthy, Robert R. Bartunek, Swanson, Midgley, Gangwere, Kitchin & McLarney, LLC, Overland Park, KS, for Certified Master Builders Corporation.

### *MEMORANDUM AND ORDER*

VANBEBBER, Chief Judge.

Plaintiffs William Alexander, and John and Carolyn Hall bring this action alleging that defendant Certified Master Builder Corporation—a subsidiary of the Home Builders Association of Greater Kansas City (HBA)—committed deceptive and unconscionable acts and practices under the Kansas Consumer Protection Act (KCPA), K.S.A. 50–623 *et seq.* The case is before the court on defendant's motions (Docs.79, 84) for summary judgment. For the reasons set forth below, defendant's motions are granted with respect to plaintiffs' claims for civil penalties, and denied in all other respects.

## I. Summary Judgment Standards

Summary judgment is appropriate if the evidence presented by the parties demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could resolve the issue either way. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue is "material" if it is essential to the proper disposition of the claim. *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). The court must consider the record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion. *Id.*

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party will not bear the burden of persuasion at trial, that party "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671 (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific evidence that creates a genuine issue of material fact left for trial. *Id.*

## II. Factual Background

The following facts are either uncontroverted or are based on evidence submitted in summary judgment papers viewed in a light most favorable to plaintiffs. Immaterial facts and facts not properly supported by the record are omitted.

### A. Facts Relating to All Parties

This case arises from two independent residential construction agreements—one between plaintiff William Alexander and Michael Everhart d/b/a Everhart Homes, Inc., and one between plaintiffs John and Carolyn Hall and Everhart. At the time that the agreements were entered into and during the subsequent construction of the homes, Everhart was a Certified Master Builder. The Certified Master Builder Corporation (CMB) is an organization created "to promote the home building industry and to encourage professionalism within that industry." CMB promoted the industry through its membership program, which purportedly "require[d] all Certified Master Builders to meet strict qualifications [and] benefit[ed] the home buying public by providing a means to recognize qualified, reliable home builders." Plaintiffs allege that CMB misrepresented the benefits of contracting with a Certified Master Builder.

In its effort to promote the home-building industry, CMB distributed a brochure which provided a detailed description of the benefits of contracting with a Certified Master Builder. The brochure provides that, "[w]hen you select a Certified Master Builder, you can enjoy the protection of a Conciliation and Arbitration agreement. Should you have a complaint that cannot be resolved with your builder, the [CMB's] Arbitration and Conciliation Committee will investigate to determine the builder's responsibility ."

Under the Certified Master Builder seal, the brochure explains, "[t]he Builder who displays the Certified Master Builder Seal has demonstrated the highest standards of CHARACTER TRUST AND PROFESSIONALISM." In a section labeled "Earning the Certification," the brochure provides:

> To become a Certified Master Builder, an applicant must:
> ■ have experience in the home or commercial construction profession for a specified period of time

- have built a required number of homes
- have demonstrated financial and on-site responsibilities
- be a full-time professional who derives his principal income from home building and/or related real estate activities
- submit the names of previous customers as references
- have Certified Master Builder sponsors with personal knowledge of the applicant's business integrity and construction knowledge
- have an acceptable credit history
- appear before a committed of Certified Master Builders for a personal review
- agree to take part in annual continuing education
- agree to abide by the Code of Ethics of the Certified Master Builder program
- agree to binding arbitration in the event of an unresolved complaint from a customer

Once accepted as a Certified Master Builder, members are reviewed annually.

The brochure also lists the address and telephone number of CMB.

In a *Kansas City Star* article dated September 20, 1992, CMB announced the CMB program and stated that, "[a]ll members of the HBA who apply to the program by Nov. 1 will be grandfathered into the program." This announcement followed a statement that ninety-percent of HBA members exceed the program's standards.

At its inception, CMB allowed then-current HBA members to gain CMB membership without meeting the qualifying requirements. Michael Everhart d/b/a Everhart Homes became a Certified Master Builder through this exemption. Everhart contractually agreed with CMB upon membership to follow CMB's code of ethics and to offer a one-year limited warranty meeting CMB's requirements.

CMB does not require members of the program to use a form contract. CMB does nothing to check the contract language used by CMB members, or to verify that the contracts are clear and contain the required language. Specifically, CMB did not approve Everhart's contract with Alexander or the Halls. If a CMB member did not comply with the rules and regulations, the member was subject to termination or non-renewal of membership. Members are generally reviewed for continuation of membership, with each initial review coinciding with the membership anniversary date. Everhart, however, did not receive a review for at least twenty months after becoming a member of the CMB program in July 1992.

After receiving numerous homeowner complaints, CMB investigated Everhart and refused to renew his CMB membership. CMB's October 1994 summary of its file on Everhart stated that Everhart engaged in the following: (a) misrepresentations regarding his contract being the approved CMB form; (b) cost-plus contracts resulting in excessive prices; (c) quitting work on a home if disputes arose, even if he was at fault; (d) abuse and threats toward buyers and subcontractors; (e) overbilling (for work); (f) disputes with over one-half of his buyers; (g) disputes with subcontractors and suppliers.

### B. Facts Specific to Alexander's Claims

In March 1993, Alexander was considering various builders. Everhart gave Alexander the CMB brochure explaining the benefits accruing to Alexander from contracting with Everhart as a Certified Master Builder. Alexander claims that he had not seen any articles or advertisements that informed him that founding members of the CMB did not "earn the certification," or that described the grandfathering process by which builders who were HBA members in good standing were made CMB members without requiring the background information and program compliance described in the brochure.

On April 1, 1993, Alexander and Everhart entered into a residential construction agreement. Alexander read the contract, initialed each page, and signed at the end of the contract. The contract included a provision stating that the contract and home were "covered by the [CMB] Program," and expressly incorporated the conciliation and arbitration procedures of CMB's program, as "described in the limited warranty." The contract further provided for arbitration procedures in the event that the buyer does not opt for CMB's procedures. The builder's limited warranty, which was attached to the contract, covered defects in workmanship and materials and expressly applied for one year from the date of closing. The builder's limited warranty stated nothing about the CMB procedures. Alexander did not talk to anyone at CMB prior to signing the contract with Everhart.

As of the date that Alexander received the CMB brochure, Alexander believed, based on representations in the brochure, that Everhart had home-building experience. As of April 1, 1993, Alexander claims that he had no knowledge that Everhart demonstrated a lack of financial and on-site responsibility or that he was not a full-time professional deriving his principal income from home-building. Alexander claims that, if CMB had told him that Everhart was grandfathered into the program, Alexander would have insisted on obtaining references and viewing homes built by Everhart. Alexander relied on the representations in the brochure that CMB verified the qualifications of its builder members, and that the builders had the experience, financial responsibility, on-site responsibility, business integrity, construction knowledge, character and professionalism to "earn the certification." Alexander claims that he also relied on the brochure's statements that, if he had a complaint with the builder, the arbitration and conciliation committee would investigate to determine the builder's liability, the brochures' representation that each builder complied with the Code of Ethics, the representation that he would be protected by the CMB program, and the representation that each builder demonstrated the highest standards of character, trust and professionalism.

In January 1994, before construction of the home was complete, disputes arose between Alexander and Everhart, and Everhart demanded arbitration under the contract. Alexander understood that Everhart could demand arbitration, but he believed that the arbitration procedures referenced in the CMB brochure were available at Alexander's option. Alexander contacted CMB regarding the conciliation and arbitration procedures because the brochure provided that arbitration was available through the CMB program. Alexander called CMB to get assistance in selecting an expert for the arbitration. Diane Lair, an employee of CMB, however, told him that his home did not qualify for arbitration under the program because he had not closed on the house. Alexander never formally requested CMB's conciliation and arbitration procedure. Alexander instead selected an arbitrator pursuant to Everhart's demand.

In March 1995, Alexander filed a lawsuit in the District Court of Johnson County, Kansas, claiming that Everhart fraudulently induced him to enter the contract. In February 1997, Judge Larry McClain ruled that Everhart did not fraudulently induce Alexander to enter the contract and compelled Alexander to arbitrate all of his claims against Everhart. In March 1998, Alexander and Everhart submitted their claims to arbitration, including Alexander's claims for construction damages. In April 1998, the arbitrators awarded Alexander partial relief on his claims against Everhart. In October 1998, however, Judge McClain vacated the arbitration award.

### C.  Facts Specific to Hall's Claims

In October or December 1992, while deciding between builders, the Halls received the CMB brochure. The Halls had also seen several other articles and advertisements that made the same representations

included in the CMB brochure. The Halls chose Everhart over another builder because Everhart was a Certified Master Builder. The Halls would not have chosen Everhart if they had not believed the representations in the CMB promotional materials. Based on the CMB brochure and other promotional materials, the Halls believed that CMB would conciliate any disputes that arose between them and the builder. Prior to signing any contract, the Halls had reviewed the September 20, 1992 article in the Kansas City Star, indicating that HBA members were grandfathered into the CMB program, but the Halls claim that they did not realize that HBA members were not required to meet the qualifications for membership into CMB's program. CMB also offered other articles from March and April 1993 that indicated HBA members were not required to go through the formal application process.

On December 23, 1992, the Halls and Everhart entered into a residential construction contract. The contract contained the same terms discussed with respect to the Alexander contract. The Halls read the contract and the attached limited warranty, which covered defects in workmanship and materials by the builder, before signing the contract. The Halls did not speak with anyone at CMB prior to executing their agreement with Everhart. After signing the contract with Everhart, the Halls received a copy of the separate CMB limited warranty form providing that the arbitration and conciliation procedures did not apply until after closing.

After disputes arose between Everhart and the Halls, the Halls requested and were refused access to the conciliation and arbitration procedures of CMB because they had not yet closed on their house or received a certificate of occupancy. The Halls then submitted their claims against Everhart to the binding arbitration pursuant to the contract, seeking monetary damages from Everhart's construction of the house and an award requiring Everhart to warrant all labor and materials installed and completed. The arbitrators entered their award on March 15, 1994, granting monetary damages and requiring Everhart to warrant until November 17, 1994, all labor and materials installed and completed. The arbitration panel made findings, denying monetary damages for certain specific claims and granting damages of $8,615.25 on several other specific claims. In this action, the Halls also claim damages from the construction of their home. On December 22, 1994, the Halls filed a lawsuit against Everhart in the District Court of Johnson County, Kansas. The arbitration award was confirmed by Judge Gerald T. Elliott on December 12, 1996. The monetary damages awarded in the arbitration were satisfied in full. On December 1, 1997, the Halls and Everhart settled all remaining claims between them.

### III. Analysis

Plaintiffs assert KCPA claims for actual damages and civil penalties. CMB requests summary judgment on all claims.

### A. Statute of Limitations

CMB raises a statute of limitations defense to plaintiffs' claims for civil penalties, and to Alexander's claim for actual damages. "KCPA actions seeking actual damages are governed by the three-year statute of limitations period of [K.S.A. 60–512(2),] and KCPA actions seeking civil penalties are governed by the one-year statute of limitations of [K.S.A. 60–514(3).]" *Griffin v. Security Pac. Auto. Fin. Servs. Corp.*, 25 F.Supp.2d 1214, 1217 (D.Kan.1998). In *Griffin*, as in this case, the plaintiff brought claims for actual damages and for civil penalties. *Id.* at 1216–17. Here, plaintiffs' claims for civil penalties are governed by the one-year statute of limitations. *See id.* at 1217.

This action was filed on October 22, 1996. Any claims for civil penalties which accrued before October 22, 1995 are, therefore, barred. It is uncontroverted that Alexander knew of CMB's alleged misrepresentations by January 1994, after he had experienced problems with Everhart and his request for CMB's arbitration and conciliation procedures had been rejected.

Likewise, it is uncontroverted that the Halls knew of CMB's misrepresentations by March 1994. Plaintiffs' claims for civil penalties are, therefore, barred by the one-year statute of limitations and summary judgment is granted with respect to those claims.

■ The three-year statute of limitations in K.S.A. 60–512(2) applies to Alexander's claim for actual damages. *See id.* Thus, Alexander's claim for actual damages is barred if it accrued before October 22, 1993. Alexander's claim accrued when he discovered CMB's alleged misrepresentations. *See Burton v. R.J. Reynolds Tobacco Co.,* 884 F.Supp. 1515, 1524 (D.Kan. 1995) (KCPA claim sounds largely in fraud); *Kelly v. Primeline Advisory, Inc.,* 256 Kan. 978, 988, 889 P.2d 130 (1995) (fraud-based statutory claim accrues when the plaintiff discovers the fraud).

In *Kelly,* the Kansas Supreme Court held that fraud-based securities claims under K.S.A. 17–1268(a) did not accrue until the plaintiff discovered the misrepresentations. 256 Kan. at 988, 889 P.2d 130. The court recognized that, under K.S.A. 60–513(a)(3), the discovery rule applied to common law fraud claims. *Id.* at 983, 889 P.2d 130. Because the liability was created by statute, however, the court applied the statute of limitations in 60–512(2). *Id.* Nevertheless, the court emphasized that 17–1268(a) created a fraud-based claim similar—although not identical—to a common law fraud claim, and that, although 60–512(2) is silent regarding when the action accrues, the legislature intended that the discovery rule apply to fraud-based securities claims because 17–1268(a) had a "clear remedial nature" and should be construed liberally to protect the investing public. *Id.* at 988, 889 P.2d 130.

The court finds the reasoning in *Kelly* persuasive here. The KCPA creates a claim similar—although not identical—to

a common law fraud claim. *See Burton,* 884 F.Supp. at 1524 (KCPA claims sound largely in fraud); *Haag v. Dry Basement, Inc.,* 11 Kan.App.2d 649, 650, 732 P.2d 392 (1987) (same). The KCPA, like 17–1268, has a remedial nature. *Equitable Life Leasing Corp. v. Abbick,* 243 Kan. 513, 517, 757 P.2d 304 (1988). Moreover, the Kansas legislature indicated its intent by its enactment of K.S.A. 50–623, which requires that the KCPA "be construed liberally to ... protect consumers from suppliers who commit deceptive and unconscionable practices." *See also State ex rel. Stephan v. Brotherhood Bank & Trust Co.,* 8 Kan.App.2d 57, 60, 649 P.2d 419 (1982) (KCPA is to be liberally construed in favor of the consumer). Accordingly, the court holds that Alexander's cause of action accrued when Alexander discovered, or reasonably should have discovered, the alleged misrepresentations.

■ The evidence submitted with the summary judgment papers indicates that problems arose between Alexander and Everhart shortly before January 1994, and that CMB subsequently refused Alexander's request for assistance with arbitration and conciliation. The court finds that a genuine issue of fact exists whether Alexander discovered, or reasonably should have discovered, CMB's alleged misrepresentations prior to October 22, 1993.

*B. Collateral Estoppel*

■ CMB raises collateral estoppel as a defense to plaintiffs' claims for actual damages. CMB argues that the claims for actual damages are precluded to the extent that such damages were denied on the merits in the arbitration proceedings with Everhart. Because the Alexander–Everhart arbitration award was vacated, the court denies CMB's motion with respect to Alexander's claim for actual damages. The Halls' claim requires more discussion.[1]

---

1. CMB also argues that the Halls are barred from recovering damages that were previously awarded in the arbitration under the "one satisfaction" rule. *See FDIC v. UMIC, Inc.,* 136 F.3d 1375, 1379 (10th Cir.) (injured party ordinarily entitled to only one satisfaction of a single injury), *cert. denied,* —— U.S. ——, 119 S.Ct. 404, 142 L.Ed.2d 328 (1998). The Halls concede that they may not recover for damages already awarded in the arbitration.

█ "Under the full faith and credit statute, federal courts must give the judicial proceedings of any state court the same preclusive effect that those judgments would be given by the courts of that state." *Ryan v. City of Shawnee,* 13 F.3d 345, 347 (10th Cir.1993) (citing 28 U.S.C. § 1738). Arbitration, however, is not a judicial proceeding under the full faith and credit statute. *Id.* (citing *McDonald v. City of West Branch, Mich.,* 466 U.S. 284, 288, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984)). If the arbitration award was reviewed and confirmed in state court, section 1738 requires the court to "ascertain and give the same effect to the state court judgment as the courts of [the confirming state] would give a state court decision affirming an arbitration award." *Id.* (citing *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 381, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)).

█ The arbitation award was confirmed by the state district court in Johnson County, Kansas. Under Kansas law, collateral estoppel "may be based on a judgment confirming an award of arbitration." *L.R. Foy Constr. Co. v. Professional Mechanical Contractors,* 13 Kan.App.2d 188, 195, 766 P.2d 196 (1988). In such a case, the findings of the arbitrator are treated as if they were made by the state court. *See id.* at 195–96, 766 P.2d 196 (arbitrators' findings bar the present action); *State v. Thomas Constr. Co.,* 8 Kan. App.2d 283, 286, 655 P.2d 471 (1982) ("arbitrators' award, when confirmed by the court, has the same res judicata effect as any judgment as to all matters encompassed within the claims submitted").

> [C]ollateral estoppel may be invoked where the following is shown: (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and

judgment, (2) the parties must be the same or in privity, and (3) the issue litigated must have been determined and necessary to support the judgment.

*Hawkinson v. Bennett,* 265 Kan. 564, 589, 962 P.2d 445 (1998); *see also Phelps v. Hamilton,* 122 F.3d 1309, 1318 (10th Cir. 1997) (citing *Jackson Trak Group, Inc. v. Mid States Port Auth.,* 242 Kan. 683, 690–91, 751 P.2d 122 (1988)).

█ CMB argues that the arbitrator considered and denied several of the specific damages claimed in this case. The evidence currently before the court is inadequate to make such a determination. CMB has failed to establish that the specific damages claimed here are the same damages denied on the merits in the arbitration award. Based on the record currently before the court, CMB has failed to establish a prior judgment on an identical issue involved in this litigation.

### C. Actual Damages

CMB argues that the "benefit of the bargain" rule, rather than the "out of pocket" rule, applies to plaintiffs' claims for actual damages and, therefore, plaintiffs' recovery must be limited to the difference between the actual value of the property at the time of the sale and the value that the property would have had if the representations had been true.[2] CMB misconstrues the "benefit of the bargain" rule.

█ The "benefit of the bargain" measure of damages allows a plaintiff "to recover as damages an amount which will place him as nearly as possible in the same position he would have occupied if [the contracting party] had performed his contract obligations … [including] the loss of the gains he reasonably expected to make from the contract." 9 Stuart M. Speiser et

---

Moreover, any duplicitous recovery can be set off by the amount awarded in arbitration. The court, therefore, need not address this issue further.

2. The KCPA gives the court no guidance on the proper measure of damages. K.S.A. 50–634(b) simply provides that, "[a] consumer who is aggrieved by a violation of this act may recover, but not in a class action, damages or a civil penalty … whichever is greater."

al., *The American Law of Torts*, § 32:119 (1992); *see also* Restatement (Second) of Torts § 549 (1977). The "benefit of the bargain" measure of damages stands in contrast to the "out of pocket" measure of damages, which provides only that the plaintiff recover the amount necessary to be "in the same position as he occupied before entering in to the transaction." Speiser et al., *supra*, § 32:120; *see also Scholz Homes, Inc. v. Wallace*, 590 F.2d 860, 864 (10th Cir.1979). Thus, the "benefit of the bargain" rule allows the plaintiff to recover more, not less, than he would recover under the "out of pocket" rule.

■ Regardless of which rule is applied,[3] "the defrauded party may recover any additional damages which are a natural and proximate consequence of the defendant's misrepresentations." Speiser et al., *supra*, § 32:118; W. Page Keeton et al., *Prosser and Keeton on Torts* § 110, at 766-67 (5th ed.1984); *see also Meehan v. Adams Enter., Inc.*, 211 Kan. 353, 355-56, 507 P.2d 849 (1973) (adopting language stating that consequential damages may be recovered for fraudulent misrepresentations). Denial of such damages would be contrary to the purpose of the "benefit of the bargain" rule—to place the plaintiff in the position that he would be in if the representations had been true.

■ CMB also contends that plaintiffs cannot establish that CMB caused plaintiffs' damages. Plaintiffs have offered evidence that they contracted with Everhart based on the representations made by CMB, and that their contracts with Everhart resulted in damage. Viewing the evidence in a light most favorable to plaintiffs, there is a genuine issue of material fact regarding whether CMB's alleged KCPA violations caused plaintiffs' damages.

### D. KCPA Violations

■ CMB contends that plaintiffs cannot establish a violation of the KCPA. The court disagrees. K.S.A. 50–626(a) provides that, "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." In its Memorandum and Order (Doc. 33) filed November 12, 1997, and its Order (Doc. 73) filed March 17, 1998, the court ruled that CMB is a supplier under the KCPA and that CMB and plaintiffs engaged in a consumer transaction under the KCPA. Thus, CMB argues only that there is no genuine issue of material fact whether CMB committed a deceptive act or practice. The court disagrees. Plaintiffs have created a genuine issue of material fact whether CMB made material representations and whether such representations were false. Moreover, a reasonable trier of fact could infer from the evidence submitted that CMB made the alleged misrepresentations willfully or knowingly. *See* K.S.A. 50–626(b)(1) (misrepresentation made knowingly or with reason to know of falsehood); 50–626(b)(2) (misrepresentations made willfully).

■ Plaintiffs also assert claims under K.S.A. 50–627, which provides that, "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." "The unconscionability of an act or practice is a question for the court." K.S.A. 50–627(b). Nevertheless, the court need not resolve that issue at the summary judgment stage, particularly when the underlying facts remain in dispute. Accordingly, summary judgment is denied with respect to plaintiffs' claims for actual damages.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant Certified Master Builder Corporation's motions

---

**3.** At this time, the court need not decide which measure of damages actually applies to claims under the KCPA, but expresses reservations regarding whether the "benefit of the bargain" rule applies under the facts of this case. *See Scholz Homes*, 590 F.2d at 864 (rejecting "benefit of the bargain" rule against defendant who fraudulently induced plaintiff to contract with third party); *Citizens State Bank v. Shearson Lehman Bros., Inc.*, 874 F.Supp. 307, 309 (D.Kan.1994).

(Docs.79, 84) for summary judgment are granted with respect to plaintiffs' claims for civil penalties, and denied with respect to plaintiffs' claims for actual damages.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**