NOT DESIGNATED FOR PUBLICATION

No. 126,485

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JUAN MANUEL AGUILAR and NORA AGUILAR,
*Appellees*,

v.

SEGUNDO A. APONTE CACEDA and ROSARIO N. ACOSTA DE APONTE,
*Appellants*.

MEMORANDUM OPINION

Appeal from Ford District Court; LAURA H. LEWIS, judge. Submitted without oral argument. Opinion filed October 25, 2024. Affirmed in part and vacated in part.

*Terry J. Malone*, of Williams-Malone, P.A., of Dodge City, for appellants.

*David H. Snapp*, of David H. Snapp, L.C., of Dodge City, for appellees.

Before ARNOLD-BURGER, C.J., GARDNER and CLINE, JJ.

PER CURIAM:  Segundo A. Aponte Caceda and Rosario N. Acosta De Aponte (the Apontes) appeal the district court's finding that they committed fraud by silence against Juan Manuel Aguilar and Nora Aguilar (the Aguilars). The dispute arose after the Aguilars purchased property from the Apontes, who failed to disclose they negotiated and received a settlement check from the Kansas Department of Transportation (KDOT) to compensate the Apontes for future damages related to a highway being constructed nearby. After reviewing the issues presented, we affirm the district court's decision in part and vacate in part.

1

On August 11, 2020, KDOT offered to pay the Apontes $63,605 to establish a right-of-way on property they owned along Highway 50 near Dodge City and to reimburse for damages that would occur during an impending highway expansion. The Apontes ultimately accepted the offer and signed a contract of conveyance on October 13, 2020. The total costs breakdown included: $7,800 for a .78-acre right-of-way, $15,000 for proximity damages, $2,045 for a split-rail fence, $30,600 for tree replacement, $6,780 for the lateral relocation, and $1,380 for four-wire fencing.

Shortly thereafter, the Apontes advertised the property for sale on Facebook. The Aguilars saw this advertisement on October 23, 2020, and arranged a viewing the next day. Rosario showed the Aguilars the property and explained "the City" would be expanding the highway soon and the Aguilars would not have to worry about paying for anything because "[t]he City will take care of it." According to the Aguilars, Rosario never mentioned the fact that KDOT had paid the Apontes for damages that would occur because of the highway expansion. Although the Aguilars admitted they were aware of the highway construction before the sale, they stated they would not have agreed to purchase the property had they known the extent of the construction and damages that would occur.

In any event, because they were interested in buying the property, the Aguilars left a $2,500 cash deposit with the Apontes. The Aguilars then applied for a mortgage loan with Golden Plains Credit Union, which required a home inspection and a real estate appraisal of the property. Before those occurred, on October 28, 2020, the Aguilars signed a contract to purchase the property for $278,900. The property description on the purchase contract listed only the address as "10530 W Highway 50, Dodge City KS."

2

Before closing on November 30, 2020, the parties signed an amendment to the purchase agreement to add the legal description for the property, as well as a disclaimer stating, "Buyers are aware that the sale of the home is EXCLUDING approximately .78 acres of the legal description mentioned above." The amendment also included a handwritten notation initialed by the parties stating, "Property is as is."

The Aguilars later learned about the agreement between KDOT and the Apontes when Nora contacted employees from Ford County in December 2020 to inquire about "the City" repairing the fence and lateral lines of the septic system. The Aguilars sued the Apontes, alleging they fraudulently misrepresented the condition of the property and breached the terms of the purchase contract by failing to disclose the payment from KDOT.

At trial, the Aguilars agreed that nobody from the title company or anyone else specifically mentioned the KDOT contract or the damages payment when they were buying the property. The Aguilars were aware of the highway construction but believed Rosario had told them everything they needed to know. The Aguilars admitted, however, that they knew they would not be buying the entire property because a portion would be used for the highway construction.

The Apontes, on the other hand, testified the Aguilars were fully aware they would not be receiving the .78-acre portion of the property acquired by KDOT and knew about the payments. They sent the KDOT documents to the title company so that the purchase contract and title work could be completed correctly. Segundo said he did not mention the damages and the KDOT payment to the Aguilars because at the time "that property was no longer part of it. That part of the property already belonged to the City." The Apontes testified that Rosario reduced the purchase price from $350,000 to account for KDOT's acquisition of the .78-acre tract and the money they had received from KDOT.

3

Michael Miller, the appraiser hired by Golden Plains, assessed the property on November 9, 2020. He said he was aware of the KDOT condemnation but did not believe any transactions had occurred because he found no quitclaim deeds in the county records. Golden Plains had not notified him about any contract involving KDOT. The Apontes' son—who was present during the appraisal—repeatedly said that "the Buyers had been told" about a portion of property being taken by KDOT for the highway construction. Miller appraised the property at $288,000, which reflected the "pre-condemnation" value because Miller assessed it "as of the effective date" based on what he could see and what was available in county records. Miller also stated the property was never worth $350,000 in its pre-condemnation condition by "any stretch of the imagination." Casey Rynerson completed the home inspection on November 10, 2020, but his inspection report also did not mention anything about KDOT repairing the lateral lines of the septic system, nor was Rynerson asked to determine how the property would be affected by the loss of the .78 acres.

At the end of the two-day bench trial, the district court found the Apontes committed fraud by silence "by failing to disclose the extent of the damages to the property from the highway expansion, and the payment for such damages by KDOT to the defendants." The court further set the amount of damages as "the amount of the damage payment received by the defendants from KDOT," and ordered the Apontes to pay the Aguilars $63,305.

The Apontes timely appealed.

ANALYSIS

I.    The Aguilars presented substantial competent evidence to support their fraud by silence claim.

The Apontes argue the district court erred by treating the Aguilars' lack of knowledge about the KDOT damages payment as a material fact in support of a fraud by silence claim. The Aguilars counter that the evidence presented at trial establishes that information about the KDOT damages payment was material to their purchasing decision and the Apontes' behavior shows they understood its materiality.

*The Aguilars must show fraud by clear and convincing evidence, and we review the district court's factual findings to determine whether they were supported by substantial competent evidence.*

To prevail, the Aguilars must show fraud by clear and convincing evidence. See *Alires v. McGehee*, 277 Kan. 398, 403, 85 P.3d 1191 (2004). The clear and convincing evidence standard is an intermediate standard of proof between a preponderance of the evidence and proof beyond a reasonable doubt. *In re B.D.-Y.*, 286 Kan. 686, Syl. ¶ 2, 187 P.3d 594 (2008). Moreover, the existence of fraud is normally a question of fact, and appellate courts review a district court's factual findings to determine whether they were supported by substantial competent evidence. *Schlaikjer v. Kaplan*, 296 Kan. 456, 468, 293 P.3d 155 (2013) (citing *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 [2009]). Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019).

Finally, appellate courts review a district court's legal conclusions de novo. See *Gannon v. State*, 305 Kan. 850, 881, 390 P.3d 461 (2017). Likewise, appellate courts

exercise unlimited review over the interpretation and legal effect of written instruments. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018).

> *The district court's conclusion that the Apontes failed to disclose a material fact to the Aguilars was supported by substantial competent evidence.*

The elements of fraud by silence are: (1) The defendant had knowledge of material facts that the plaintiff did not have and could not have discovered by the exercise of reasonable diligence; (2) the defendant was obligated to communicate the material facts to the plaintiff; (3) the defendant intentionally failed to communicate to the plaintiff the material facts; (4) the plaintiff justifiably relied upon the defendant to communicate the material facts to the plaintiff; and (5) the plaintiff sustained damages from the defendant's failure to communicate the material facts to the plaintiff. *Stechschulte v. Jennings*, 297 Kan. 2, 21, 298 P.3d 1083 (2013).

The Apontes do not contest the district court's findings on any of these elements directly. Instead, they argue that the district court erred by basing its fraud by silence determination on an "immaterial fact." In their view, the amount of the payment from KDOT was immaterial because the Aguilars received the "important information" about the impending highway expansion before they agreed to purchase the property. Their argument is not persuasive.

To begin, the Apontes mistakenly focus on arguing the amount of the KDOT payment was an immaterial fact, but the district court's fraud by silence determination is more expansive. Here, the court concluded the Apontes failed to disclose "the extent of the damages to the property from the highway expansion, and the payment for such damages by KDOT to the [Apontes]." The court further found that "[t]he contract terms would have been negotiated further had the plaintiffs been furnished the information withheld by the defendants, and plaintiffs may not have purchased the property had the

6

information been disclosed to them." In other words, there were two material facts underlying the district court's decision: (1) the full extent of the damages that would occur; and (2) the amount of money received from KDOT.

The Kansas Supreme Court has described a material matter as "one to which a reasonable man would attach importance in determining his choice of action in the transaction in question." *Griffith v. Byers Construction Co.*, 212 Kan. 65, 73, 510 P.2d 198 (1973) (citing Restatement (Second) of Torts § 538 [Ten. Draft No. 10, 1964]); see also PIK Civ. 4th 127.41 (2024 Supp.) ("A fact is material if it is one to which a reasonable man would attach importance in determining *(his) (her)* choice of action in the transaction in question.").

As for the extent of the property damages that would occur because of the highway expansion, the Apontes concede that was a material fact affecting the decision to purchase the property. But because the Apontes minimally challenge the district court's assessment of the elements of a fraud by silence claim based on that material fact, they have waived and abandoned those arguments. *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) (points raised incidentally in a brief and not argued are deemed waived or abandoned). At most, the Apontes assert there was undisputed evidence showing they told the Aguilars that the highway construction would occur. But counter to this point, the evidence supports the district court's finding that the Aguilars placed importance on the extent of the highway construction because they agreed they would not have purchased the home had they known otherwise. There was also testimony from the Aguilars stating Rosario spoke only generally about the highway construction when showing the house, and Rosario admitted she failed to disclose the full terms of the KDOT contract to the title company. Thus, the district court did not err in concluding this was a material fact in support of its fraud by silence determination.

7

As for the amount of money KDOT paid the Apontes, the Apontes fail to demonstrate that fact was immaterial to the Aguilars' purchasing decision. As support, the Apontes cite *Brennan v. Kunzle*, 37 Kan. App. 2d 365, 154 P.3d 1094 (2007). In that case, the sellers brought a mortgage foreclosure action against the buyers. The district court granted summary judgment in the sellers' favor, rejecting the buyers' counterclaim for fraud by silence based on the sellers failing to disclose a professional inspection report which revealed potential water leaks in the house. On appeal, sellers disputed the materiality of the omitted inspection report, but this court concluded the report was material because "a reasonable person would attach importance to a professional report that alerted them to further investigation of a house in order to discover the source of water leaks." 37 Kan. App. 2d at 382. This court found a genuine issue of material fact existed regarding the reasonableness of the buyers' efforts to discover the source of the water leaks and reversed and remanded the district court's summary judgment ruling on the fraud by silence counterclaim. 37 Kan. App. 2d at 386.

But the Apontes make no attempt to argue that no reasonable person would attach importance to the amount of money they received from KDOT for the acquisition of the .78-acre portion of the property and the resulting damages that would occur from the highway expansion. Instead, they contend knowing the highway construction would occur was sufficient to prompt a reasonable person to further investigate. While that may be true, it does not make the amount of the KDOT payment immaterial to the purchasing decision by the Aguilars. The Aguilars were interested in buying the property despite the highway construction because they were led to believe that "the City" would take care of any resulting damages. Knowing the sellers received any money—let alone $63,305, or around 23% of the eventual purchase price and appraised value of the property— immediately before listing the house to cover those damages would be important to a prospective buyer.

As a result, we find there was substantial competent evidence to support the district court's factual finding that the extent of the expected damages to the property and the amount of the KDOT payment were material facts.

II.     The district court abused its discretion in calculating damages.

The Apontes also argue the district court's damages award is excessive and based on insufficient evidence. The Aguilars counter that the court's damages award is appropriate because they would be compensated for their reasonable and legitimate expectations in the enjoyment of the property.

> *We review the record in a light most favorable to the Aguilars to determine whether there is evidence supporting the district court's calculation of pecuniary or economic loss.*

Appellate courts reviewing a damages award for an objective element of damages must view the record in a light most favorable to the prevailing party to determine whether there is evidence supporting the fact-finder's calculation of pecuniary or economic loss. *Shirley v. Smith*, 261 Kan. 685, 694, 933 P.2d 651 (1997). A damages claim must also be supported by evidence that is not conjectural or speculative. See *McKissick v. Frye*, 255 Kan. 566, 591, 876 P.2d 1371 (1994).

> *The district court should not have included the cost of the .78 acres sold to KDOT, because the Aguilars were aware that portion of the property was not included in the purchase.*

The crux of the Apontes' challenge to the damages award in this case is that the district court awarded damages for losses that were not actually sustained by the Aguilars. Because the evidence showed the Aguilars knew they were not acquiring the .78-acre tract and that KDOT would be removing the fence and trees during the highway construction, the Apontes contend the Aguilars should be entitled only to be compensated

9

for the $15,000 in proximity damages and the $6,780 cost to cure the lateral line replacement, for a total damages award of $21,780. Anything more would be "putting the Aguilar's [sic] in a better position [than] prior to the injury."

The Aguilars respond that this court should assess the damages award under the "'benefit of the bargain' rule" by determining whether the damages "'are a natural and proximate consequence of the defendant's misrepresentations.'" *Alexander v. Certified Master Builder Corp.*, 43 F. Supp. 2d 1242, 1251 (D. Kan. 1999). Stated another way, a purchaser who has been defrauded by false representations about a property may recover as damages the difference between the actual value of the property at the time of sale and the value the property would have had if the representations had been true. *Fisher v. Mr. Harold's Hair Lab, Inc.*, 215 Kan. 515, 527, 527 P.2d 1026 (1974) (noting the rule "has always been followed in Kansas").

Here, the Apontes claimed they reduced the sale price from $350,000 to account for KDOT's acquisition of the .78-acre tract, but the appraiser hired by the Aguilars' bank testified at trial that he did not consider the KDOT acquisition at all when assessing the property value because it was not confirmed in the county records at that point. Viewing this evidence in the Aguilars' favor shows that the actual value of the property was lower than the eventual purchase price because of the Apontes' misrepresentations by omission.

That said, even under this deferential standard of review, it cannot be said that the Aguilars were entitled to the full amount of the KDOT payment. As the Apontes note, the record shows the Aguilars fully agreed to purchase the property knowing they were not acquiring the .78-acre tract, which KDOT valued at $7,800. The difference between the purchase price and the appraised value is approximately $9,100, which—although not exactly the same amount—suggests the parties had negotiated to account for the loss of the .78-acre tract. The same would not be true, however, for the remaining costs associated with the KDOT payment. The Aguilars were unaware of the extent of the

10

damages that would occur on the property because of misrepresentations by the Apontes, even specifically stating they did not realize the trees had any value. Had they been aware of the KDOT payments allocated for those costs, they would have been able to negotiate further on the purchase price. It was neither conjectural nor speculative for the district court to conclude that amounts KDOT agreed to compensate the Apontes for these additional costs amounted to losses sustained by the Aguilars.

For these reasons we affirm the district court's ruling that the Apontes committed fraud by silence by failing to disclose the extent of the property damages that would be incurred and the amount of the payment from KDOT. Yet we vacate only the portion of the district court's damages award related to KDOT's acquisition of the .78-acre tract of the property because the evidence supports a finding that the amount ($7,800) was already accounted for in the purchase price.

Affirmed in part and vacated in part.